153 P.3d 1074

**CHRISTY C., Appellant,**

**v.**

**ARIZONA DEPARTMENT OF ECONOMIC SECURITY, Antonio F. Jr., Cruzito F., Johnny C., Sierra C., Corina C., Appellees.**

No. 1 CA–JV 06–0142.

Court of Appeals of Arizona, Division 1, Department B.

March 20, 2007.

Terry Goddard, Attorney General, by Dawn R. Williams, Assistant Attorney General, Tucson, Attorneys for Appellee Arizona Department of Economic Security.

David Bell, Mesa, Attorney for Appellant.

## OPINION

BARKER, Judge.

¶ 1 We treat in this case the relationship of the individual factors set forth in *Michael J. v. Arizona Department of Economic Security*, 196 Ariz. 246, 995 P.2d 682 (2000), to a juvenile court's decision to sever parental rights because of a felony sentence "of such length that the child will be deprived of a normal home for a period of years." Ariz. Rev.Stat. ("A.R.S.") section 8–533(B)(4) (Supp.2006). For the reasons below, we affirm.

### I.

¶ 2 Christy C. ("Christy") appeals from the juvenile court's termination of her parental rights as to five of her six children. Christy is the mother of six children: Sierra C., born March 1, 1997; Angelica C., born October 24, 1998; Corina C., born November 17, 2000; Antonio F., born November 15, 2001; Johnny C., born January 3, 2004; and Cruzito F., born July 7, 2005. Child Protective Services ("CPS") has been involved with Christy for a period of years, since at least Johnny C.'s birth in January 2004; however, it is unclear from the evidence admitted at trial exactly when and why CPS initially became involved.

¶ 3 Christy has an extensive history of criminal activity. On December 16, 2003, Christy was arrested and charged with aggravated assault for slapping a police officer. She pled guilty and was placed on supervised probation for three years, in addition to deferred three-month incarceration to begin February 1, 2005. On March 12, 2004, Christy was charged with two counts of child abuse. Christy pled guilty to one count of child abuse and was placed on supervised probation for three years with the added requirements of parenting classes and drug testing.

¶ 4 On March 29, 2004, Christy and her boyfriend, Antonio, offered to sell heroin and a handgun to an undercover Phoenix police officer. When the police executed a search warrant on Christy's home, they found a loaded, stolen handgun in the children's diaper bag. The bag was lying on the kitchen floor within reach of the children. As a

result of this incident, Antonio F., Jr., and Cruzito F. were placed with Antonio's mother. Christy's three other children were residing with Christy's mother at that time.

¶ 5 Christy failed to report for her three months of deferred jail on February 1, 2005. A Maricopa County Probation Violation Report stated, "[b]ecause of CPS involvement, [Christy] does not have custody of any of her five children, but continues to use them as excuses for not attending the mandatory two times per week group sessions. She has also recently used them as an excuse for failing to self-surrender to complete her deferred jail condition."

¶ 6 On September 19, 2005, Christy was again arrested for an incident involving the sale of drugs. She was indicted by a grand jury on four counts: 1) misconduct involving weapons, a class four felony; 2) possession for sale of narcotic drugs, a class two felony; 3) possession or use of dangerous drugs, a class four felony; and 4) misconduct involving weapons, a class four felony. On February 6, 2006, Christy pled guilty to count two. Pursuant to the plea agreement, counts one and three were dismissed; it is unclear whether count four was also dismissed. Christy was sentenced to 6.5 years of imprisonment to begin March 9, 2006. Additionally, because Christy had violated the terms of her probation for her December 16, 2003 aggravated assault charge, her probation was revoked. She was instead sentenced to one year of imprisonment for that charge, to begin March 9, 2006, and to run concurrently with her 6.5 year sentence. Christy's probation period for the child abuse charge was also reinstated for a period of two years following release from her prison term.

¶ 7 Following her September 19, 2005 arrest, the Arizona Department of Economic Security ("ADES") filed a petition alleging that Sierra C., Corina C., Antonio F., Jr., Johnny C., and Cruzito F. were dependent as to Christy. Although the petition also alleged that Angelica C. was dependent, custody of Angelica C. was later given to her biological father and the dependency petition as to Angelica C. was dismissed. The dependency petition as to the remaining five children alleged that Christy was unable to parent due to substance abuse, distribution of drugs from the home, weapons in the home, neglect, and incarceration. On October 25, 2005, the juvenile court found the allegations in the dependency petition to be true by a preponderance of the evidence.

¶ 8 After Christy pled guilty to possession for sale of narcotics and was sentenced to 6.5 years of imprisonment, ADES filed a motion to terminate her parental rights as to the five children.[1] The motion alleged that Christy's felony conviction proved her unfitness as a parent and that the prison sentence would deprive the children "of a normal home for a period of years" under A.R.S. § 8–533(B)(4). The motion further alleged that severance of parental rights would be in the children's best interests.

¶ 9 A hearing regarding the termination of Christy's parental rights was held on June 2, 2006. Although Christy was present at the hearing, Christy's CPS case manager, Marisa Sanchez, was the only person to testify. Among other things, Sanchez testified that ADES was seeking severance in this case "due to the length of [the prison] sentence." Sanchez also testified that severance and adoption were in the children's best interests, as Christy was unable to parent for the foreseeable future. She stated that the children were placed in homes that were meeting their needs, and that the children were adoptable. The presentence reports, pleas, and related documents to Christy's criminal offenses were also admitted into evidence at trial. The CPS reports themselves, though marked, were never offered into evidence.[2]

1. The motion also sought to terminate the parental rights of the children's fathers. The court's ruling severing the parental rights of the fathers is not an issue in this appeal.

2. Rule 66(E) of the Arizona Rules of Procedure for Juvenile Court states that "[a] social study prepared pursuant to A.R.S. 8–536 or by order of the court is admissible as evidence unless a party has filed a notice of objection as required by Rule 44(B)(2)(e) and (D)(2)." Rule 44(B)(2)(e) requires that the objection must be stated in the pre-hearing disclosure statement, or it "shall be deemed waived, unless otherwise ordered by the court." Ariz. R.P. Juv. Ct. 44(B)(2)(e). The requirement for such a specific pre-hearing objection appears to differ from the prior case law,

¶ 10 On June 6, 2006, the juvenile court held that Christy's term of imprisonment was "of such a length that all of the children will be deprived of a normal home for a period of years." In making its decision, the court cited *Michael J.*, 196 Ariz. 246, 995 P.2d 682, which requires the court to consider "various factors in determining whether the sentence is of such a length to deprive the children of a normal home." The juvenile court stated:

> The Court has considered the ages of the children, which as noted before, range from 11 months to nine years. The children will range from 7 to 15 years when [Christy is] to be released. Even upon release, [Christy] will be on probation for child abuse for some time. It is highly unlikely [Christy] will be able to adequately care for the children after release as [she] would have to show a period of sobriety for at least a year and participate in several services, particularly as to [her] substance abuse histories. The court has also considered that only barely minimal contact with the children can be maintained during [her] period[ ] of incarceration. As to the nature of the relationship prior to incarceration ... [the court] notes this is not the first time the children were taken into care.... [A]lternative family placements were considered, but ultimately rejected as they would not provide a suitably stable long-term placement....

The court also specifically found that severance was in each of the children's best interests.

¶ 11 Christy timely appealed from the juvenile court's order. We have jurisdiction over this appeal pursuant to A.R.S. §§ 8–235

(Supp.2006), 12–120.21 (2003), and 12–2101(B) (2003).

## II.

¶ 12 We view the facts in the light most favorable to sustaining the juvenile court's decision. *Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 282, ¶ 13, 53 P.3d 203, 207 (App.2002) (citing *Maricopa County Juv. Action No. J–75482*, 111 Ariz. 588, 591, 536 P.2d 197, 200 (1975)). Termination of the parent-child relationship is appropriate if any one of the statutory grounds is proved by clear and convincing evidence. *Jennifer G. v. Ariz. Dep't of Econ. Sec.*, 211 Ariz. 450, 453, ¶ 12, 123 P.3d 186, 189 (App.2005). A finding that termination is in the children's best interests must be made by a preponderance of the evidence. *Id.* (citing *Kent K. v. Bobby M.*, 210 Ariz. 279, 284, ¶ 22, 110 P.3d 1013, 1018 (2005)). "[W]e will accept the juvenile court's findings of fact unless no reasonable evidence supports those findings, and we will affirm a severance order unless it is clearly erroneous." *Jesus M.*, 203 Ariz. at 280, ¶ 4, 53 P.3d at 205.

¶ 13 Christy raises two issues on appeal. She argues: 1) the evidence presented was insufficient to show that her prison sentence would deprive the children of "a normal home for a period of years," A.R.S. § 8–533(B)(4), pursuant to the factors set forth in *Michael J.*, 196 Ariz. at 251–52, ¶ 29, 995 P.2d at 687–88; and 2) the juvenile court erred in failing to make "more individualized findings." We consider each argument below.

---

which does not place such restrictions on the timing of the objection in order for the objection to be valid. *See Maricopa County Juv. Action No. J–75482*, 111 Ariz. 588, 593, 536 P.2d 197, 202 (1975) (The court interpreted the predecessor to Rule 66(E) to permit consideration of guidance center reports, "but if counsel for any party objects to any material in the report being considered by the trial court, such material may not be considered. Any party desiring to have the material in the report considered by the trial court must follow the procedure for admission of evidence in a civil case.").

Here, there was no objection in the form required by Rule 66(E) to the CPS reports. The reports themselves, "Report to the Juvenile Court

for Preliminary Protective Hearing and/or Initial Dependency Hearing" and "Progress Report to the Juvenile Court" authored by CPS officials, would appear to qualify for admission pursuant to that rule. However, the state formally advised the trial court and the parties at the hearing that it would not seek admission of the reports after acknowledging that "counsel for the mother ... may have objections to these coming in." There is sufficient evidence in the record to resolve this case without reference to the additional facts in the CPS reports. Thus, without deciding whether the lack of an objection pursuant to Rule 44(B)(2)(e) may be waived or excused in this setting, we resolve this case without reference to those documents.

## A.

¶ 14 A parent-child relationship may be terminated on the grounds that "the parent is deprived of civil liberties due to the conviction of a felony . . . if the sentence of that parent is of such length that the child will be deprived of a normal home for a period of years." A.R.S. § 8–533(B)(4). In *Michael J.*, the Arizona Supreme Court set out a non-exclusive list of factors that courts should consider when determining if a parent's prison sentence will deprive a child of "a normal home for a period of years." 196 Ariz. at 251–52, ¶ 29, 995 P.2d at 687–88. The non-exclusive factors are as follows:

(1) the length and strength of any parent-child relationship existing when incarceration begins, (2) the degree to which the parent-child relationship can be continued and nurtured during the incarceration, (3) the age of the child and the relationship between the child's age and the likelihood that incarceration will deprive the child of a normal home, (4) the length of the sentence, (5) the availability of another parent to provide a normal home life, and (6) the effect of the deprivation of a parental presence on the child at issue.

*Id.*

¶ 15 Christy specifically argues that the evidence does not support two of the factors: "the length and strength" of the parent-child relationship and "the degree to which the parent-child relationship can be continued and nurtured during incarceration." *Id.* Christy then argues that severance was erroneously granted based on this asserted error. Christy's argument, however, partially misses the mark. A key point that *Michael J.* made was that *all* relevant factors needed to be considered as part of the severance inquiry. *Id.* at 251, 995 P.2d at 687; *see also Jesus M.*, 203 Ariz. at 281, ¶ 9, 53 P.3d at 206 (stating that "the juvenile court must consider the many facts and circumstances specific to each case"); *Pima County Juv. Action No. S–983*, 133 Ariz. 182, 183–85, 650 P.2d 484, 485–87 (App.1982) (discussing at length the circumstances surrounding a father's conviction and imprisonment for sexual assault); *James S. v. Ariz. Dep't of Econ. Sec.*, 193 Ariz. 351, 355–56,

¶¶ 16–17, 972 P.2d 684, 688–89 (App.1998) (finding that a father's 5.5–year prison term warranted severance given the factual circumstances). A lack of evidence on one or several of the *Michael J.* factors may or may not require reversal or remand on a severance order. As *Michael J.* states, "[i]n some instances, a 20–year sentence might not provide sufficient basis for severing an incarcerated parent's rights, while in another case a 3–year sentence could provide the needed basis." 196 Ariz. at 251, 995 P.2d at 687. Similarly, there is no threshold level under each individual factor in *Michael J.* that either compels, or forbids, severance. It is an individualized, fact-specific inquiry. *Id.* (rejecting a "bright line" definition, as "the better approach is to consider each case on its particular facts"). We turn now to the two allegedly deficient factors.

¶ 16 As to the factor of length and strength of the parent-child relationships, the juvenile court specifically found,

[a]s to the nature of the relationship prior to incarceration, the Court takes it as a given that [Christy] love[s her] children, but notes this is not the first time the children were taken into care, noting the exhibits which detail CPS involvement after [Christy's] arrest for Child Abuse. Sierra and Corina's relationship with [Christy] is stronger than the three younger children, but it cannot be maintained in such a way to provide a normal home for the next six years.

The facts clearly support this finding. Marisa Sanchez testified at the severance hearing that she was unsure if the three youngest children, aged four, two, and eight months, even knew who their mother was. She could only testify that the two older children, Sierra and Corinna, aged nine and five, knew their mother. Even so, Christy had not been providing primary care for them; Sierra and Corinna had been living with Christy's mother for an extended period prior to her incarceration. Furthermore, Christy's prior conviction for child abuse, pertaining to Antonio F. and Johnny F., supports the juvenile court's findings. Thus, there is clear evidentiary support for the juvenile court's finding on this factor.

¶ 17 As to the second contested *Michael J.* factor, whether the parent-child relationships could not be fostered during Christy's incarceration, the record also supports the juvenile court's finding. The court noted that it had "considered that only barely minimal contact with the children can be maintained during [the] period[ ] of incarceration." The court can certainly consider that incarceration will as a practical matter typically preclude all but minimal visits. *See* Ariz. Dep't of Corrections, Dep't Order Manual Chapter 911, Dep't Order 911, "Inmate Visitation" (Oct. 21, 2001), http://www. azcorrections.gov/adc/policy_inclusion.asp? menuName=/all_includes/custommenus/di. htm&fileName=/Policies/911.htm#APPLI CABILITY (listing certain of the extensive regulations for prison visitation) (last visited Feb. 26, 2007). Christy argued at trial that the minimal visitation permitted by parents in a prison setting was sufficient to nurture the parent-child relationship here:

> Well people—you know, you go down to the jail, there's people bringing in the children to visit their parents. You go down to prisons, it's the same thing there. Is it normal? It is, for some people it is.

The trial court, however, was free to consider that minimal prison visitation weighed in favor of severance under this factor in the trial judge's decision-making calculus. Further, the Arizona Department of Corrections requires an approved adult to accompany minor children for visitation to take place. *Id.* at Order 911.01, Rule 1.2.7. Christy's counsel argued in closing that she "can make arrangements" to facilitate visitation. Counsel argued, "I want the court to give my client the ability to say to a family friend or a relative or the father's relative, here are our children, take care of them for us. And we

could do that." Christy, however, offered no evidence at trial as to individuals who could care for the children and facilitate visitation with her in order to nurture the parent-child relationship while she was incarcerated. The absence of any such evidence also supports the trial court's finding as to this *Michael J.* factor.

¶ 18 Additionally, as to the factor of nurturing a parent-child relationship while Christy was incarcerated, the record shows that Christy had difficulties nurturing her relationship with the children when she did *not* have the significant impediment of incarceration. Her child abuse conviction, history of drug abuse, and the children's removal from her home for reasons other than her current felony conviction demonstrate that fostering the parent-child relationship was problematic for Christy even before she was incarcerated. These facts support the trial judge's findings on this factor that Christy would not be able to adequately foster the parent-child relationships with the truly significant burdens presented by her incarceration.[3]

¶ 19 Although Christy only objects as to the two factors stated above, and does not contest the trial court's findings on the other four *Michael J.* factors,[4] she argues that severance was in error. First, as noted above, there is a factual basis for the two *Michael J.* factors that are contested on appeal. Second, *Michael J.* requires the trial court to consider all relevant factors in determining whether severance is appropriate. 196 Ariz. at 251–52, ¶ 29, 995 P.2d at 687–88. When considering the trial court's express findings, we affirm the trial court's order if the facts at trial support the trial court's findings whether or not each supportive fact is specifically called out by the trial court in

---

3. It could be argued that because Christy has fewer distractions while in prison she can focus on nurturing the relationships with her children, perhaps more so than before she was incarcerated. There were no facts, however, such as letters to the children or phone calls, to indicate she was attempting to overcome the physical separation from her children. Neither would the trial judge be compelled to find that such evidence overcomes the barrier of physical separation.

4. We note that in this case the attorneys at the severance hearing did not specifically address or argue each of the individual factors articulated in *Michael J.* For severance hearings in which the ground for termination is A.R.S. § 8–533(B)(4), the better practice for counsel is to specifically address each *Michael J.* factor in the presentation of evidence and argument in order to make clear for the court which factors support severance and which do not.

its findings. *See State v. Smith,* 123 Ariz. 243, 247, 599 P.2d 199, 203 (1979) ("The trial court's findings of fact ... will be upheld by this Court if supported by adequate evidence in the record."). It imposes an undue burden and inappropriate task on a trial judge to list *every* fact upon which his or her findings are based. *See Gilliland v. Rodriquez,* 77 Ariz. 163, 167, 268 P.2d 334, 337 (1954) ("A court is called upon to make findings of only ultimate facts and is not required to bolster them by subsidiary findings on evidentiary matters upon which such ultimate facts are based...."). Given Christy's extensive history of CPS involvement, her child abuse conviction, the children's exposure to illegal drugs and weapons, the inability of other family members to care for the children, and the fact that the children had already been removed from her home for a substantial period by the time she was sentenced to 6.5–years' imprisonment, there was sufficient evidence in this case for the juvenile court to find that Christy's sentence would deprive the children of "a normal home for a period of years" based on A.R.S. § 8–533(B)(4) and all of the factors articulated in *Michael J.* Severance here was not an abuse of discretion.

**B.**

■ ¶ 20 The statutory scheme requires that an order terminating the parent-child relationship "shall recite the findings on which the order is based." A.R.S. § 8–538(A) (Supp.2006). Christy argues that "the trial court erred in not making more individualized findings in this case." She claims that the juvenile court should have made a separate finding as to each child. Christy, however, made no such objection in the juvenile court.

■ ¶ 21 We generally do not consider objections raised for the first time on appeal. *See Leigh v. Swartz,* 74 Ariz. 108, 114, 245 P.2d 262, 266 (1952); *Jost v. Ross,* 82 Ariz. 245, 247, 311 P.2d 840, 842 (1957). This is

particularly so as it relates to the alleged lack of detail in the juvenile court's findings. As stated in *Bayless Investment & Trading Co. v. Bekins Moving & Storage Co.,* a party may not "sit back and not call the trial court's attention to the lack of a specific finding on a critical issue, and then urge on appeal that mere lack of a finding on that critical issue as a grounds for reversal." 26 Ariz.App. 265, 271, 547 P.2d 1065, 1071 (1976). Thus, this argument has been waived.[5]

**III.**

¶ 22 For the foregoing reasons, we affirm the juvenile court's termination of Christy's parental rights.

CONCURRING: PATRICIA K. NORRIS, Presiding Judge, and JON W. THOMPSON, Judge.

---

5. The findings here were clearly sufficient. Even if they were not, any error would have been harmless, and remand not required. *See State v. Sullivan,* 205 Ariz. 285, 290, ¶¶ 23–24, 69 P.3d 1006, 1011 (App.2003) (stating that the appropri- ate way to correct a judge's harmless error regarding jury instructions would be to "take appropriate supervisory action" with regard to the judge, and not "penalize[e] victims [or parties] by requiring a new trial").