NOTICE: NOT FOR PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION DOES NOT CREATE
LEGAL PRECEDENT AND MAY NOT BE CITED EXCEPT AS AUTHORIZED.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

SHAWNA S., *Appellant*,

*v.*

DEPARTMENT OF CHILD SAFETY, R.G., *Appellees*.

No. 1 CA-JV 14-0116
FILED 9-23-14

Appeal from the Superior Court in Maricopa County
No. JD510758
The Honorable Brian K. Ishikawa, Judge

**AFFIRMED**

COUNSEL

Maricopa County Public Advocate, Mesa
By Suzanne Sanchez
*Counsel for Appellant*

Arizona Attorney General's Office, Mesa
By Nicholas Chapman-Hushek
*Counsel for Appellee Department of Child Safety*

**MEMORANDUM DECISION**

Judge John C. Gemmill delivered the decision of the Court, in which Presiding Judge Patricia K. Norris and Judge Lawrence F. Winthrop joined.

**G E M M I L L**, Judge:

¶1        Shawna S. ("Mother") appeals the juvenile court's order granting a change in physical custody of her daughter, R.G.  Mother asserts the court abused its discretion by separating dependent sisters without requiring frequent visitation or other ongoing contact, in violation of Arizona Revised Statutes ("A.R.S.") section 8-513(D).  For the following reasons, we affirm.

## BACKGROUND

¶2        Shawna S. is the mother of two daughters, R.G., born in 2006 and J.S, born in 2012.  Pedro G. is the natural father of R.G. and Todd E. is the natural father of J.S.  Neither father is a party to this appeal.

¶3        In early 2013, Arizona Department of Economic Security ("DCS")[1] took custody of the minor children and placed them in a foster home.  In a May 2013 minute entry, the court noted that an Interstate Compact on the Placement of Children ("ICPC") agreement with Mississippi was being processed to place R.G. with Pedro.  In June 2013, the juvenile court found that R.G. and J.S. were dependent as to Shawna S. and each was dependent as to her respective father.  At a September 2013 hearing, the court found that the most appropriate case plan for J.S., in regard to Shawna S. and Todd, was severance and adoption.  As for R.G. and Pedro, the court found that family reunification was the most appropriate plan.  The court's minute entry from the September 2013 hearing indicates that Pedro wished to keep the sisters together.  In November 2013, the juvenile court terminated Todd E.'s parental rights to J.S.

¶4        By January 2014, the court indicated in a minute entry that the ICPC agreement to place R.G. with Pedro was progressing.  On April 2, 2014, the court noted in a minute entry that DCS informed the court that the ICPC for R.G. was approved.  The court directed DCS to "follow up regarding an ICPC for the child [J.S.]."  The court also set a Dependency – Uncontested Report & Review hearing for April 18, 2014.

---

[1]  In this decision, we refer to the Department of Child Safety ("DCS") instead of the Arizona Department of Economic Security ("ADES") to reflect the Arizona Legislature's enacting of S.B. 1001, Section 157, 51st Leg., 2nd Spc. Session (Ariz. 2014), which transferred ADES' powers, duties, and purposes to DCS in May 2014.

**¶5**        During the hearing on April 18, 2014, DCS orally moved to change placement of R.G. to her father, Pedro.  The placement of R.G. with her father was supported by the approved ICPC agreement from Mississippi.

**¶6**        As a result of DCS' oral motion, the parties discussed the placement of R.G. with Pedro in Mississippi.  Pedro also expressed interest in J.S. being placed with him, assuming ICPC approval, and Mother initially supported this approach.   Due to ICPC's heightened standards for placement of a non-relative child, however, it was clear that J.S. would remain with foster parents in Arizona, at least for the time being.  Mother withdrew her request for J.S.'s placement with Pedro, during the hearing, because of her understanding that the "likelihood of the children being moved together at the same time [was] diminished."  She informed the court that she would "be submitting information regarding [J.S.'s] paternal grandmother in Nevada . . . and requesting placement with her paternal grandmother up there."   Pedro apprised the court that the "children need[ed] to be placed together," that he would "maintain contact with [J.S.] until such time as she can join her sister," and that he has "a good relationship [with J.S.'s] foster parents."

**¶7**        At the end of the hearing on April 18, 2014, the court granted the motion to place R.G. with Pedro in Mississippi.  At no time did Mother object to R.G. being placed with Pedro through the ICPC, nor did Mother object that the court made insufficient findings to support its order under A.R.S. § 8-513(D).

**¶8**        Mother timely appeals the order issued on April 18, 2014, authorizing R.G. to live with her father in Mississippi.  We have jurisdiction in accordance with A.R.S. §§ 8–235(A), 12–120.21(A)(1), –2101(B), and Arizona Rule of Procedure for the Juvenile Court 103.

## DISCUSSION

**¶9**        Mother argues that the court abused its discretion by placing R.G. with her father in Mississippi and J.S. with foster parents in Arizona, thereby separating dependent sisters without requiring frequent visitation or other ongoing contact, pursuant to A.R.S. § 8-513(D).  Specifically, she asserts that § 8-513(D) imposes an obligation on the court to require meaningful contact between siblings when siblings are placed in separate homes.  Mother contends the juvenile court did not meet that requirement

when the court made the placement decision. We do not reach Mother's substantive arguments, however, because we agree with DCS that Mother waived her arguments for appeal purposes by not asserting any objection to the placement in the juvenile court. *See Shawanee S. v. Ariz. Dep't. of Econ. Sec.*, 234 Ariz. 174, 177, ¶ 11, 319 P.3d 236, 239 (App. 2014) (holding that a parent waived a claim that DCS failed to provide appropriate unification services by failing to object in the juvenile court); *Kimu P. v. Ariz. Dep't of Econ. Sec.*, 218 Ariz. 39, 44 n.3, ¶ 10, 178 P.3d 511, 516 n.3 (App. 2008) (noting this court will generally not address arguments first asserted on appeal).

¶10 This court has considered analogous issues of waiver in the juvenile court. In *Christy C. v. Arizona Department of Economic Security*, a parent made the argument on appeal that the juvenile court erred by failing to follow requirements from A.R.S. § 8-538(A) because the juvenile court did not make individualized findings in its order. 214 Ariz. 445, 452, ¶ 20, 153 P.3d 1074, 1081 (App. 2007). The statute applicable in *Christy C.* required the court to include in its order "findings on which the order is based." *Id.* (citing A.R.S. § 8-538(A)). This court held the parent waived the argument because the court generally does not "consider objections raised for the first time on appeal." *Id.* at 452, ¶ 21, 153 P.3d at 1081.

¶11 Similarly, in *Christina G. v. Arizona Department of Economic Security*, the court indicated that a parent may waive the right to challenge on appeal the adequacy of ADES' reunification efforts by failing to raise the issue in the juvenile court proceedings. 227 Ariz. 231, 235 n.8, ¶ 15, 256 P.3d 628, 632 n.8 (App. 2011). However, the court declined to affirm the case on waiver because ADES did not assert waiver in its answering brief on appeal. *Id.*

¶12 In *Shawanee S.*, DCS asserted waiver on appeal and the court affirmed on that basis. 174 Ariz. at 177, ¶ 11, 319 P.3d at 239. The court concluded that the parent had waived her right to argue on appeal that DCS failed to comply with its obligation to provide appropriate reunification services because the parent did not raise the objection in the juvenile court. *Id.* at 179, ¶ 18, 319 P.3d at 241. The court further noted that "it was incumbent on her to promptly bring those concerns to the attention of the juvenile court, thereby giving that court a reasonable opportunity to address the matter and ensure that [DCS] was in compliance with its obligation." *Id.*

¶13 We find the holdings of *Christy C.* and *Shawanee S.* applicable and dispositive here. The record does not reveal that Shawna S. made any

objections to DCS' plan to place R.G. with Pedro or any objections that the court failed to make sufficient findings regarding the efforts of DCS to facilitate ongoing contact or frequent visitation between the siblings. *See id.* at 179, ¶ 18, 319 P.3d at 241; *see also Christy C.*, 214 Ariz. at 452, ¶21, 153 P.3d at 1081 (noting that a litigant may not "sit back and not call the trial court's attention to the lack of a specific finding on a critical issue, and then urge on appeal that mere lack of a finding on that critical issue is a grounds for reversal") (citation omitted).

## CONCLUSION

**¶14**       Because Mother did not assert any objections to the court's order in the juvenile court, Mother has waived her right to raise such issues for the first time on appeal. We therefore affirm the juvenile court's April 18, 2014 decision to place R.G. with Pedro.

