NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

JERRY P., *Appellant*,

*v.*

DEPARTMENT OF CHILD SAFETY, A.P., *Appellees*.

No. 1 CA-JV 14-0210
FILED 4-28-2015

Appeal from the Superior Court in Maricopa County
No. JD16784
The Honorable Joan M. Sinclair, Judge

**AFFIRMED**

COUNSEL

John L. Popilek, PC, Scottsdale
By John L. Popilek
*Counsel for Appellant*

Arizona Attorney General's Office, Phoenix
By Carol A. Salvati
*Counsel for Appellee Department of Child Safety*

---

## MEMORANDUM DECISION

Presiding Judge Kent E. Cattani delivered the decision of the Court, in which Judge Lawrence F. Winthrop and Judge Peter B. Swann joined.

---

**C A T T A N I**, Judge:

**¶1**        Jerry P. ("Father") appeals the superior court's order terminating his parental rights to his son A.P. based on abandonment. For reasons that follow, we affirm.

### FACTS AND PROCEDURAL BACKGROUND

**¶2**        A.P. was born in January 2011. Father had been incarcerated since September 2010 and was not present at A.P.'s birth. A.P.'s mother ("Mother") was arrested in October 2012, after which the Arizona Department of Child Safety ("DCS") removed A.P and his siblings from Mother's care.[1] A.P. and five of Mother's other children were placed with his maternal great-aunt and uncle. Father was released from prison in mid-June 2014.

**¶3**        In August 2013, while Father was still incarcerated, DCS moved to terminate Father's parental rights on grounds of abandonment.[2] At the contested severance trial in July 2014, Father testified that he began writing letters to A.P. after DCS filed the severance motion. Father acknowledged that he had never met A.P., and that he had never provided any support while in prison even though he received income from his Native American tribe ranging from $270 to $500 each quarter. Father admitted that the only information he knew of A.P was through a letter from the placement. Father also admitted that he did not have a normal parent–child relationship with A.P. and that he was unable to parent A.P. "at the moment." The DCS caseworker testified that Father had not

---

[1]        Mother's parental rights were also terminated, but she is not a party to this appeal.
[2]        DCS originally asserted that the length of Father's felony sentence was an additional basis for severance, but withdrew that allegation after Father's release.

contacted DCS or requested any visits with A.P. either before or after his release from prison.

¶4 At the conclusion of the hearing, the superior court terminated Father's parental rights, finding that DCS had proven by clear and convincing evidence Father had abandoned A.P. *See* Ariz. Rev. Stat. ("A.R.S.") § 8-533(B)(1).[3] The court further found that A.P.'s great-aunt and uncle were willing to adopt A.P and concluded that that "[i]t is in the best interests of the child to be out of the system and adopted with his siblings."

¶5 Father timely appealed. We have jurisdiction under A.R.S. § 8-235(A).

## DISCUSSION

¶6 Father argues the superior court erred by (1) terminating his parental rights notwithstanding his efforts to maintain a relationship with A.P. and to improve his parenting abilities while in prison and (2) terminating his parental rights even though DCS had not provided any services.

¶7 To terminate parental rights, the superior court must find by clear and convincing evidence at least one statutory ground for severance and must find by a preponderance of the evidence that termination would serve the child's best interests. A.R.S. § 8-533(B); *Kent K. v. Bobby M.*, 210 Ariz. 279, 284, ¶ 22, 110 P.3d 1013, 1018 (2005). We accept the court's factual findings "unless no reasonable evidence supports those findings" and will affirm a termination of parental rights "unless it is clearly erroneous." *Christy C. v. Ariz. Dep't of Econ. Sec.*, 214 Ariz. 445, 449, ¶ 12, 153 P.3d 1074, 1078 (App. 2007) (citation omitted).

¶8 Abandonment is defined by statute as:

> the failure of a parent to provide reasonable support and to maintain regular contact with the child, including providing normal supervision. Abandonment includes a judicial finding that a parent has made only minimal efforts to support and communicate with the child. Failure to maintain a normal parental relationship with the child without just cause for a

---

3 Absent material revisions after the relevant date, we cite a statute's current version.

period of six months constitutes prima facie evidence of abandonment.

A.R.S. § 8-531(1). Abandonment is measured by the parent's conduct, not his subjective intent. *See Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 249–50, ¶ 18, 995 P.2d 682, 685–86 (2000).

**¶9** Although imprisonment alone does not justify severance based on abandonment, imprisonment does not preclude severance on this basis either. An incarcerated parent "must act persistently to establish the relationship however possible and must vigorously assert his legal rights to the extent necessary." *Id.* at 250, ¶ 22, 995 P.2d at 686 (citation omitted).

**¶10** Here, sufficient evidence supported the finding of abandonment. Father testified that he knew A.P. was his son "when [Mother] was two months [pregnant]," which was prior to his incarceration. Although Father took parenting classes while incarcerated in an effort to develop his parenting skills, he acknowledged that he had no relationship with A.P. and that he would not be able to effectively parent A.P. or provide for his special needs as of the time of the severance trial.

**¶11** Father failed to provide any support for or to maintain any consistent contact with A.P. Father did not begin sending A.P. letters until months after DCS filed its severance motion. Further, Father failed to provide any of his quarterly income or any other financial support to A.P. Father admitted at the severance hearing that even though he received information about the case while he was incarcerated, he never requested visitation through the court or his attorney. Father also acknowledged that upon release from prison, he did not attempt to visit A.P. or inquire about visitation with the DCS case manager. Under these circumstances, the court did not err by finding that Father had abandoned A.P.

**¶12** Father additionally argues that severance was improper because DCS failed to provide him any services. Because Father did not raise this issue before the superior court however, he has waived the issue on appeal. *See Shawanee S. v. Ariz. Dep't of Econ. Sec.*, 234 Ariz. 174, 179, ¶ 18, 319 P.3d 236, 241 (App. 2014). Moreover, in the absence of an existing parent–child relationship, a parent is not entitled to reunification services when severance is sought based on abandonment. *See Toni W. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 61, 64, 66, ¶¶ 9, 15, 993 P.2d 462, 465, 467 (App. 1999).

**¶13** Father does not challenge the superior court's best interests finding, and we find no error in the court's determination that severance was warranted.

## CONCLUSION

**¶14** For the foregoing reasons, we affirm the superior court's order terminating Father's parental rights as to A.P.



Ruth A. Willingham · Clerk of the Court
F I L E D : ama