NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

ROBERT P., *Appellant*,

*v.*

DEPARTMENT OF CHILD SAFETY, M.P., R.P., *Appellees*.

No. 1 CA-JV 15-0146
FILED 11-17-2015

Appeal from the Superior Court in Maricopa County
No.  JD18868
The Honorable Linda H. Miles, Retired Judge

**AFFIRMED**

COUNSEL

Robert D. Rosanelli, Attorney at Law, Phoenix
By Robert D. Rosanelli
*Counsel for Appellant*

Arizona Attorney General's Office, Phoenix
By Michael Valenzuela
*Counsel for Appellee Department of Child Safety*

---

## MEMORANDUM DECISION

Judge Maurice Portley delivered the decision of the Court, in which Presiding Judge Margaret H. Downie and Judge Patricia A. Orozco joined.

---

**P O R T L E Y**, Judge:

**¶1**        Robert P. ("Father") challenges the order terminating his parental rights to his two children M. and R.  Father argues the termination was clearly erroneous and contrary to the substantial evidence in the record.  For the following reasons, we affirm.

### FACTS[1] AND PROCEDURAL HISTORY

**¶2**        Father and Lindsey B. ("Mother") are the biological parents of H., who was born in 2009, M., and R.  After receiving reports that Mother and Father were neglecting H. because of their substance abuse and domestic violence, the Department filed a dependency petition.  While H.'s dependency proceeding was pending, their second child, M., was born, and the Department sought to have M. declared dependent.  The juvenile court found M. dependent and approved a family reunification case plan.  Subsequently, the juvenile court terminated Mother and Father's parental rights to H.[2]

**¶3**        The court thereafter modified M.'s case plan by adding the plan of severance and adoption, and the Department moved to terminate Mother and Father's parental rights to M.  During the pendency of M.'s severance proceedings, R., was born, and he was found to be dependent after the Department filed a dependency petition.  The juvenile court terminated Mother's parental rights to M. based on her consent and to R. after she failed to appear at the initial severance hearing.  After a hearing, the court denied the Department's motion to sever Father's parental rights

---

[1] "We view the facts in the light most favorable to upholding the juvenile court's order." *Ariz. Dep't of Econ. Sec. v. Matthew L.*, 223 Ariz. 547, 549, ¶ 7, 225 P.3d 604, 606 (App. 2010).

[2] Although the termination motion indicated the parents were relinquishing their rights and consenting to H. being adopted, that basis was withdrawn by the Department, without objection, prior to the severance hearing.

to M.[3]  As a result, the court approved a joint case plan for Father of family reunification concurrent with severance and adoption.

**¶4**　　　　A few months later, the Department filed a motion to terminate Father's parental rights to M. and R.  After the severance hearing and the juvenile court's determination that severance was appropriate, the court issued findings of fact and conclusions of law, terminating Father's parental rights because:  (1) the children had been in an out of home placement for nine months or longer; (2) the children had been in care fifteen months or longer; and (3) Father's parental rights to H. had been terminated within the preceding two years for the same reason that prevented him from discharging his parental duties to M. and R.  The court also found that termination was in the children's best interests.  Father filed this appeal, and we have jurisdiction under Arizona Revised Statutes ("A.R.S.") sections 8-235, 12-120.21(A)(1), and -2101(A)(1).[4]

## DISCUSSION

**¶5**　　　　Father argues the juvenile court erred in finding that: (1)  he failed to remedy the circumstances which caused the children to be placed in an out-of-home placement and that there was a substantial likelihood that he would not be capable of providing proper and effective parental care and control in the near future; (2) he substantially neglected or willfully refused to remedy the circumstances that caused the children to be in an out-of-home placement; and (3) his parental rights to another child were terminated within the preceding two years for the same cause, and he was currently unable to discharge his parental responsibilities due to the same cause.  He, however, did not challenge the determination that the termination was in the best interests of the children.

**¶6**　　　　A juvenile court may terminate parental rights if the Department proves any one of the statutory grounds for termination by clear and convincing evidence, *Christy C. v. Ariz. Dep't of Econ. Sec.*, 214 Ariz. 445, 449, ¶ 12, 153 P.3d 1074, 1078 (App. 2007), and demonstrates that termination is in the best interests of the child by a preponderance of the evidence, *Matthew L.*, 223 Ariz. at 549, ¶ 7, 225 P.3d at 606 (citation omitted). The court, as the trier of fact, "is in the best position to weigh the evidence, observe the parties, judge the credibility of witnesses, and make appropriate findings." *Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 280,

---

[3] Mother appealed the termination of her rights to R. but her appeal was dismissed.

[4] We cite the current version of the statute unless otherwise stated.

¶ 4, 53 P.3d 203, 205 (App. 2002) (citation omitted). We will accept the court's findings of fact unless no reasonable evidence supports those findings, and will only disturb the juvenile court's order if it is clearly erroneous. *Id.* A termination order is clearly erroneous if it is "unsupported by substantial evidence." *Desiree S. v. Dep't of Child Safety*, 235 Ariz. 532, 534, ¶ 7, 334 P.3d 222, 224 (App. 2014); *see Mealey v. Arndt*, 206 Ariz. 218, 221, ¶ 12, 76 P.3d 892, 895 (App. 2003) ("Substantial evidence is any relevant evidence from which a reasonable mind might draw a conclusion.") (internal quotation marks and citation omitted).

**¶7** Although the juvenile court terminated Father's parental rights to the children under multiple statutory grounds, we need only find that "at least one of the statutory grounds" is supported by substantial evidence. *See Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 249, ¶ 12, 995 P.2d 682, 685 (2000). To terminate a parent's rights under the prior termination provision, the court must find "[t]hat the parent has had parental rights to another child terminated within the preceding two years for the same cause and is currently unable to discharge parental responsibilities due to the same cause." A.R.S. § 8-533(B)(10).

**¶8** Father's rights to H. were terminated in 2012. He had been unable to provide a safe, stable living environment for the child, in part due to his dysfunctional relationship with Mother. Father knew Mother was mentally ill, unstable, and a drug-using teenager when they met, and their relationship was characterized by chronic instability and domestic violence.

**¶9** Although Father attested that their relationship was over, the record shows that Father maintained extensive contact with Mother, despite knowing that the relationship compromised his ability to retain custody of his children. Their continued relationship resulted in Father's arrest for pandering when he and Mother were apprehended in a 2014 prostitution incident. Moreover, there was substantial evidence demonstrating that the relationship was ongoing, and, given Father's obsession with Mother, there was a strong likelihood that he would reunite with her if granted custody of the children, despite the fact that it would be "a nightmare scenario for [the] children."

**¶10** Additionally, the Department made reasonable efforts by offering Father services to help him address the substance abuse issues, learn adequate parenting skills, and live independently from Mother. He was offered substance abuse treatment through TERROS, domestic violence counseling, and participation in a maintenance recovery program. He was also provided with significant parent aide services over the three

year period, supervised visitation with the children, and two psychological evaluations. Although Father refused to participate in the maintenance recovery program, he participated in the TERROS substance abuse program, and domestic violence counseling. However, even after completing that counseling, he fought with Mother in his apartment and alleged that he did not strike her, but that she scratched his neck as she tried to choke him. And he failed to comply with court ordered random drug testing that was implemented after he began demonstrating severe instability in his housing and employment.

¶11        Moreover, in addition to his arrest for pandering, Father was jailed two other times during the child welfare proceedings. When released, he did not consistently participate in the parenting services offered, despite being provided with transportation and a neutral visitation location by the Department. He missed approximately thirty percent of his visits with the children, and when he did participate, instead of interacting with his children, he complained about the facilities and interacted with the parent aide; he was over-dependent on the parent aide during the supervised visitations. He was frequently late for the children's medical appointments, if he attended. And although he was ordered to participate in the children's therapy appointments, some of which coincided with his supervised visits, he missed so many visits that he only attended three therapy visits over the course of several months. Father's inconsistent visits raised a concern that if the children were placed in his care, he would not continue R.'s speech therapy. As a result, the caseworker testified that Father was unable to provide a safe or stable environment for the children, and his continued contact with Mother was a willful refusal to remedy the circumstances that brought the children into care.

¶12        The evidence supports the court's findings and decision terminating Father's rights to M. and R. He refused to end his dysfunctional relationship with Mother despite the violence and instability it generated. He failed to demonstrate that he could safely and dependably parent M. and R., and he failed to take advantage of the services offered to attempt to alleviate his chronic employment and housing instability that resulted in the termination of his rights to H. Consequently, we find no error.

**CONCLUSION**

¶13        Based on the foregoing, we affirm the termination.



Ruth A. Willingham · Clerk of the Court
FILED: ama