NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS

## DIVISION ONE

JUAN F., *Appellant*,

*v.*

ERICA C., N.C., M.F., *Appellee*.

No. 1 CA-JV 21-0064
FILED 8-19-2021

Appeal from the Superior Court in Coconino County
No.  S0300AD202000053
The Honorable Elaine Fridlund-Horne, Judge

**AFFIRMED**

COUNSEL

Coconino County Public Defender's Office, Flagstaff
By Rhys Campbell
*Counsel for Appellant*

Christiansen Law, PLLC, Flagstaff
By Christopher L. Christiansen
*Counsel for Appellee*

---

**MEMORANDUM DECISION**

Judge Jennifer M. Perkins delivered the decision of the Court, in which Presiding Judge Cynthia J. Bailey and Judge Maria Elena Cruz joined.

---

**P E R K I N S**, Judge:

¶1        Juan Figueroa ("Father") appeals the juvenile court's order terminating his parental rights to N.C. and M.F. (collectively "children"). For the following reasons, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

¶2        Erica Campos ("Mother") and Father married in 2013 and share the two minor children. In February 2015, Father pled no contest, in California, to two counts of lewd or lascivious acts with a child, for molesting his nine-year-old niece. The California court sentenced Father to 10 years' imprisonment with 526 days of pre-incarceration credit.

¶3        Mother and Father divorced in February 2016, and the superior court awarded Mother sole legal decision-making and primary care of the children. The divorce decree required Father to buy a phone and minutes, and then provide that phone to Mother, who would facilitate telephone contact between the children and Father. Father gave Mother an iPad and she set up a phone plan for it. Mother then provided the iPad's phone number to Father through her attorney.

¶4        In January 2020, Father petitioned to enforce his parenting time. Father requested that Mother give his letters to the children, allow the children to talk to him, and inform him of the children's health, schooling, and milestones.

¶5        The day after the March 2020 hearing on Father's petition to enforce, Mother petitioned to terminate Father's parental rights as to both children. Mother alleged two grounds: that Father's felony convictions proved his unfitness to parent the children, and that the length of Father's sentence deprived the children of a normal home for a period of years.

¶6        The juvenile court held a termination hearing on November 6, 2020. Mother testified Father has not spoken to the children while in

2

prison, including no attempts to call via the iPad. Mother also testified that because the children have not seen their father in eight years, receiving his gifts and letters made them uncomfortable. And she stated the children consider Father a stranger. Mother is the children's main provider and can support the children without Father's help.

**¶7**　　　　Father testified he had a good relationship with the children before his incarceration. He described taking them on trips to the beach, the Colorado River, Lake Havasu, and museums. And he testified to taking the children to school. But he also acknowledged his inability to carry out common parental tasks since being incarcerated. Father claimed he tried calling the children more than 100 times and sent more than 50 letters over the past five years. But he also admitted that he has not spoken to either child during his incarceration.

**¶8**　　　　The juvenile court severed Father's parental rights on the length of sentence ground, finding his incarceration precludes him from providing the children with a normal home. Father timely appealed, and we have jurisdiction under A.R.S. §§ 8-235(A) and 12-120.21(A)(1).

## DISCUSSION

**¶9**　　　　We review the severance of parental rights for an abuse of discretion. *Titus S. v. Dep't of Child Safety*, 244 Ariz. 365, 369, ¶ 15 (App. 2018). We will uphold the juvenile court's findings of fact "if supported by adequate evidence in the record." *Christy C. v. Ariz. Dep't of Econ. Sec.*, 214 Ariz. 445, 452, ¶ 19 (App. 2007) (quoting *State v. Smith*, 123 Ariz. 243, 247 (1979)). "The juvenile court, as the trier of fact in a termination proceeding, is in the best position to weigh the evidence, observe the parties, judge the credibility of witnesses, and make appropriate findings." *Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 280, ¶ 4 (App. 2002).

## I.　　　Statutory Ground

**¶10**　　　　To sever the parent-child relationship, the juvenile court must find parental unfitness based on at least one statutory ground under A.R.S. § 8-533(B), by clear and convincing evidence. *Kent K. v. Bobby M.*, 210 Ariz. 279, 284, ¶ 22 (2005). "[S]uch a standard adequately conveys to the factfinder the level of subjective certainty about his factual conclusions necessary to satisfy due process." *Santosky v. Kramer*, 455 U.S. 745, 769 (1982). On appeal, due process requires us to assess whether a reasonable factfinder could conclude based on the record that the petitioning party has met its clear and convincing evidentiary burden to sustain the termination of parental rights. *See id.* at 747–48, 769.

¶11　　　　The juvenile court may terminate parental rights if "the parent is deprived of civil liberties due to the conviction of a felony . . . [and] the sentence of that parent is of such length that the child will be deprived of a normal home for a period of years." A.R.S. § 8-533(B)(4). *Michael J. v. Ariz. Dep't of Econ. Sec.* sets forth non-exclusive factors the court must consider when determining whether the length of a felony sentence sufficiently deprives a child of "a normal home for a period of years." 196 Ariz. 246, 251–52, ¶ 29 (2000). The court must consider:

> (1) the length and strength of any parent-child relationship existing when incarceration begins, (2) the degree to which the parent-child relationship can be continued and nurtured during the incarceration, (3) the age of the child and the relationship between the child's age and the likelihood that incarceration will deprive the child of a normal home, (4) the length of the sentence, (5) the availability of another parent to provide a normal home life, and (6) the effect of the deprivation of a parental presence on the child at issue.

*Id.* The court should also consider all other relevant factors as part of the termination inquiry. *See Christy C.*, 214 Ariz. at 450, ¶ 15. But the court is not required to list its factual findings as to each factor on the record. *Id.* at 451–52, ¶ 19.

¶12　　　　The record contains sufficient evidence to support the juvenile court's findings on the length of sentence ground. The children were young when Father began serving his ten-year sentence in California. Mother testified the children never visited Father in-person. The parties presented conflicting evidence about other forms of contact. Mother claimed Father never tried to call the children and Father claimed he called them often, but never spoke to either of them. Neither party introduced evidence, such as phone records or the iPad device, to substantiate their claim. While Mother admitted receiving Father's letters, she claimed that reading the letters made the children uncomfortable because they considered him "a stranger."

¶13　　　　Father argues the juvenile court erred in assessing the *Michael J.* factors because it did not consider that Mother denied him access to the children. But the juvenile court expressly found "Mother may have interfered with Father's relationship, but only as to phone contact." And

record evidence does not support Father's assertion that the superior court held Mother in contempt of court for failing to facilitate visitation. In any event, Mother's alleged interference only affects one *Michael J.* factor: the parent-child relationship during Father's incarceration.

¶14 Father does generally dispute the juvenile court's findings on the other factors but does not point to a legal deficiency. Rather, he asks us to reweigh the evidence and reach a new conclusion, which we will not do. *See Joelle M. v. Dep't of Child Safety*, 245 Ariz. 525, 528, ¶ 18 (App. 2018). Father thus failed to establish that the juvenile court abused its discretion in finding Mother met her evidentiary burden on the length of sentence ground.

## II.        Best Interests

¶15 The juvenile court must also find by a preponderance of the evidence that termination would be in the best interests of the children. *Alma S. v. Dep't of Child Safety*, 245 Ariz. 146, 149–50, ¶ 8 (2018). Once a court has found at least one statutory ground to terminate, it may "presume that the interests of the parent and child diverge." *Kent K.*, 210 Ariz. at 286, ¶ 35. We thus focus our inquiry at the best interest stage on "the interests of the child as distinct from those of the parent." *Id.* at 285, ¶ 31. The "child's interest in stability and security" is the touchstone of our inquiry. *Id.* at 286, ¶ 34 (citation omitted). Termination of parental rights is in the child's best interests "if either: (1) the child will benefit from severance; or (2) the child will be harmed if severance is denied." *Alma S.*, 245 Ariz. at 150, ¶ 13. The court "must consider the totality of the circumstances existing at the time of the severance determination." *Id.* at 150–51, ¶ 13.

¶16 Father argues the juvenile court erred in its best interests' analysis because it "only considered that Father was a stranger to the children." But the court's termination order included factual findings based on Mother's testimony that the children will benefit from termination because they will be "at ease to know a stranger will not be contacting them." Father offers no legal basis for us to conclude that this finding is insufficient to support a best interests conclusion. The court thus did not abuse its discretion in finding that termination was in the children's best interests.

**CONCLUSION**

¶17        We affirm.



AMY M. WOOD • Clerk of the Court
FILED:   AA