NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

IN RE TERMINATION OF PARENTAL RIGHTS AS TO Z.B.

No. 1 CA-JV 25-0125

FILED 04-22-2026

---

Appeal from the Superior Court in Maricopa County
No. JD42638
The Honorable Pamela S. Gates, Judge

**AFFIRMED**

---

COUNSEL

Czop Law Firm PLLC, Queen Creek
By Steven Czop
*Counsel for Appellant Father*

Arizona Attorney General's Office, Phoenix
By Ingeet Pandya
*Counsel for Appellee Department of Child Safety*

Maricopa County Office of the Legal Advocate, Phoenix
By Amanda Adams
*Counsel for Appellee Child*

---

**MEMORANDUM DECISION**

Judge James B. Morse Jr. delivered the decision of the Court, in which Presiding Judge Andrew M. Jacobs and Judge Brian Y. Furuya joined.

---

**M O R S E** , Judge:

¶1　　　　Malik B. ("Father") appeals the termination of his parental rights to Z.B. ("Child").  We affirm.

**FACTS AND PROCEDURAL BACKGROUND**

¶2　　　　Father and Keyanna N. ("Mother") are the parents of Child, born in May 2024.[1]

¶3　　　　In January 2023, Father's older child, K.B., was born substance-exposed to fentanyl.  Upon petition by the Department of Child Safety ("DCS"), the juvenile court deemed K.B. dependent due to Father's substance abuse and incarceration. DCS provided Father with reunification services including substance-abuse treatment, drug testing, parenting classes, and supervised visitation, but he did not participate in drug testing or any substance-abuse services.

¶4　　　　One year later, the juvenile court changed K.B.'s case plan to severance and adoption, and DCS moved to terminate Father's parental rights based on both the substance-abuse and the six-months' time-in-care grounds. *See* A.R.S. § 8-533(B)(3) and (8)(b).  In April 2024, Father pled no contest, and the court granted the motion on both grounds.

¶5　　　　In May 2024, Child was also born substance-exposed to fentanyl.  Father was present at Child's birth.  Child remained hospitalized in the neonatal intensive care unit for over a month suffering from withdrawal symptoms, but Father never visited Child.  Upon Child's discharge from the hospital in June 2024, DCS took temporary custody of Child and petitioned for dependency.  For the next several months, Father did not request services, test for drugs, or seek to visit Child.

¶6　　　　In October 2024, Father was arrested for fleeing from the police.  DCS's case manager located him in jail later that month and

---

[1]　　　Mother is not a party to this appeal.

arranged for him to have a telephonic visit with Child. Father disclosed he was receiving suboxone in jail to treat his opioid addiction. He was transferred to prison the following month with an early release date in two years.

**¶7**　　　In December 2024, Father pled no contest to the dependency petition. The court set a family-reunification case plan and directed DCS to communicate with Father's corrections officer to arrange visits and any substance-abuse or parenting classes available to him while incarcerated.

**¶8**　　　The case manager attempted to coordinate services with Father's corrections officers. She arranged virtual visits in prison between Father and Child, although visits in May and June 2025 were canceled because DCS did not have a visit supervisor. She also sent Father a service letter in March 2025 and held a Team Decision Making Meeting that same month, which he attended.

**¶9**　　　Father also appeared virtually at periodic review hearings and requested additional services in prison. The juvenile court directed DCS's case manager to speak with Father about services available in prison and to look into whether DCS could provide "substance abuse workbooks or programs." The case manager confirmed the prison did not offer substance-abuse services, but she did not follow up on drug testing or a substance-abuse workbook.

**¶10**　　　In May 2025, DCS moved to terminate Father's parental rights to Child under the substance-abuse and the prior-termination statutory grounds. A.R.S. § 8-533(B)(3), (10).

**¶11**　　　At the contested termination hearing in June 2025, the case manager testified that Father had not participated in any services or visited Child before Father's incarceration. She acknowledged that DCS's efforts to provide reunification services during his incarceration were limited to virtual visitation and attempts to coordinate services with his corrections officers. She also acknowledged he did not receive any referrals for substance-abuse services because of his incarceration. She characterized these efforts as "not so diligent," but she explained that even if DCS could provide substance-abuse services in prison, DCS would need to see Father establish six months of sobriety after his release from prison. She also explained that Child would need to wait about two years for Father to be released from prison and establish sobriety, which she did not believe was in Child's best interests.

**¶12**      Father testified that he was present at the hospital for Child's birth and spoke with the case manager at the hospital. He admitted he failed to participate in substance-abuse treatment or drug testing during K.B.'s dependency and before his current incarceration. But he reported he had negative drug tests while incarcerated and described participating in GED classes, as well as classes on decision-making and changing offender behavior. He acknowledged the prison did not offer substance-abuse treatment.

**¶13**      In August 2025, the court terminated Father's parental rights to Child on both the chronic substance-abuse and the prior-termination grounds.

**¶14**      Father timely appealed, and we have jurisdiction under A.R.S. §§ 8-235(A), 12-120.21(A)(1), and -2101(A)(1).

## DISCUSSION

**¶15**      A parent's right to custody and control of his or her own child is fundamental but not absolute. *Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 248, ¶¶ 11–12 (2000). To terminate a parent-child relationship, the juvenile court must find at least one statutory ground under A.R.S. § 8-533(B) by clear and convincing evidence and that termination is in the child's best interests by a preponderance of the evidence. *Alma S. v. Dep't of Child Safety*, 245 Ariz. 146, 149–50, ¶ 8 (2018).

**¶16**      In reviewing the juvenile court's termination order, we accept the court's factual findings if reasonable evidence and inferences support them and affirm the court's legal conclusions about the statutory grounds unless clearly erroneous. *Brionna J. v. Dep't of Child Safety*, 255 Ariz. 471, 478–79, ¶¶ 30–31 (2023). We will not reweigh evidence or reevaluate witness credibility on appeal. *Maria G. v. Dep't of Child Safety*, 253 Ariz. 364, 366, ¶ 8 (App. 2022).

### I.     Substance-Abuse and Prior-Termination Grounds.

**¶17**      To terminate parental rights under the substance-abuse ground, DCS must prove that (1) the parent cannot discharge parental responsibilities because of a history of chronic substance abuse and (2) "there are reasonable grounds to believe that the condition will continue for a prolonged indeterminate period." A.R.S. § 8-533(B)(3).

4

**¶18** The prior-termination ground requires DCS to prove that (1) the parent's parental rights to another child were terminated within two years for the same cause and (2) the parent "is currently unable to discharge parental responsibilities due to the same cause." A.R.S. § 8-533(B)(10).

**¶19** Father concedes that his parental rights were terminated as to K.B. within the prior two years because of his substance abuse. But, he argues, the record contains insufficient evidence to support the juvenile court's finding that he abused substances around the time of Child's birth and before the termination hearing. He asserts this evidence was needed to establish the remaining elements of the grounds alleged: (1) that he was currently unable to discharge parental responsibilities and (2) that his substance abuse would continue for a prolonged indeterminate period.

**¶20** The evidence presented at the termination hearing, however, establishes both elements. Father has a longstanding substance-abuse problem he had not resolved by the time of the termination hearing. Beginning in 2016, he has had multiple substance-abuse related arrests and convictions. While on probation in 2021, he tested positive for cocaine. In February 2023, he was arrested on warrants and had drug paraphernalia on him. In May 2023, he was arrested for DUI after he overdosed in his car and bystanders had to break his car window and put his car in park to prevent an accident. In April 2024, the court terminated his parental rights to K.B. based on substance abuse.

**¶21** When Child was born in May 2024, Father did not contact DCS to engage in substance-abuse services or visits, and he refused drug testing. When he was arrested in October 2024, he needed suboxone treatment in jail to treat his opioid addiction.

**¶22** By the time of the termination hearing, Father had not engaged in any substance-abuse services or demonstrated any ability to remain sober outside of prison. He also acknowledged that someone else would need to parent Child until his release from prison.

**¶23** This record adequately supports the juvenile court's findings that Father was unable to discharge parental responsibilities at the time of the termination hearing because of a long history of substance abuse "and that the conditions causing the prior termination will continue for a prolonged and indeterminate period."

## II.     Reunification Services.

**¶24**         Under both the substance-abuse and the prior-termination grounds, DCS must also prove it made a reasonable effort to provide the parent with appropriate reunification services or that such effort would be futile. *Mary Lou C. v. Ariz. Dep't of Econ. Sec.*, 207 Ariz. 43, 49, ¶ 15 (App. 2004) (citing *Mary Ellen C. v. Ariz. Dep't of Econ. Sec.*, 193 Ariz. 185, 193, ¶ 42 (App. 1999)).  DCS meets this obligation by providing the parent with "the time and opportunity to participate in programs designed to help [him or] her become an effective parent." *Maricopa Cnty. Juv. Action No. JS-501904*, 180 Ariz. 348, 353 (App. 1994).  But DCS need not provide every conceivable service or ensure the parent participates in the services offered. *Id.*

**¶25**         Father argues the juvenile court erred by finding DCS made a reasonable effort to provide him with reunification services.  He contends DCS provided him with no reunification services at the time of Child's birth and, after he was incarcerated, DCS provided only a few virtual visits.  He points out that even the case manager conceded DCS's efforts were "not so diligent."

**¶26**         The record shows DCS offered Father services before his incarceration, and he chose not to engage with services.  For instance, during K.B.'s dependency, Father did not engage in substance-abuse treatment or drug testing.  After Child was born in May 2024, Father did not visit Child in the hospital or attempt to participate in services.  He appeared by telephone at a dependency hearing in August 2024, and at his request, the court continued the hearing to September 2025.  Yet he did not appear at the continued hearing or communicate with the case manager during this time, who described him as "unreachable."

**¶27**         Moreover, once Father was incarcerated, the prison did not offer substance-abuse services and only minimal visits were possible.  The court thus did not err in finding that, although DCS made a less diligent effort at providing reunification services for Father than it did for Mother, the lack of services was due in large part to Father's actions and his incarceration. *See Christy C. v. Ariz. Dep't of Econ. Sec.*, 214 Ariz. 445, 451, ¶ 17 (App. 2007) (observing that "incarceration will as a practical matter typically preclude all but minimal visits"); *see also Jaime G. v. Dep't of Child Safety*, No. 2 CA-JV 2018-0091, 2018 WL 6583985, at *4, ¶ 17 (Ariz. App. Dec. 12, 2018) (mem. decision) ("To the extent [the father's] incarceration . . . made it more difficult to provide him with services, the fault lies with [the father], not DCS.").

**¶28**　　　Under the totality of the circumstances, the record supports the court's determination that DCS made a reasonable effort at reunification services for Father. *Mary Lou C.*, 207 Ariz. at 50, ¶ 17 (noting that the court will affirm an implicit finding if reasonable evidence supports it); *cf. Donald W. v. Dep't of Child Safety*, 247 Ariz. 9, 23, ¶ 49 (App. 2019) (noting that the juvenile court must consider the totality of the circumstances when determining whether DCS made "diligent efforts" to provide services under A.R.S. § 8-533(B)(8)).

**¶29**　　　The juvenile court therefore did not err in concluding that DCS proved both grounds for termination by clear and convincing evidence. A.R.S. § 8-533(B)(3), (10). Furthermore, Father does not challenge the juvenile court's determination that terminating his parental rights was in Child's best interests, and the record supports that finding. *See Crystal E. v. Dep't of Child Safety*, 241 Ariz. 576, 578, ¶ 6–7 (App. 2017).

## CONCLUSION

**¶30**　　　For the foregoing reasons, we affirm.



MATTHEW J. MARTIN • Clerk of the Court
**FILED**:　　　JR