NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

PEDRO R., *Appellant*,

*v.*

DEPARTMENT OF CHILD SAFETY, E.R., and M.R., *Appellees*.

No. 1 CA-JV 16-0256
FILED 12-6-2016

Appeal from the Superior Court in Maricopa County
No. JD27918
The Honorable John R. Ditsworth, Judge

**AFFIRMED**

COUNSEL

The Stavris Law Firm, PLLC, Scottsdale
By Christopher Stavris
*Counsel for Appellant*

Arizona Attorney General's Office, Tucson
By Cathleen E. Fuller
*Counsel for Appellee*, Department of Child Safety

MEMORANDUM DECISION

Presiding Judge Patricia K. Norris delivered the decision of the Court, in which Judge Samuel A. Thumma and Judge Margaret H. Downie joined.

N O R R I S, Judge:

¶1 This appeal arises out of an order entered by the juvenile court terminating Pedro R.'s parental rights to E.R. and M.R. under Arizona Revised Statutes ("A.R.S.") section 8-533(B)(4) (Supp. 2015) (severance of parental rights based on length of felony sentence).[1] Pedro first argues the Department of Child Safety ("DCS") presented insufficient evidence to terminate his parental rights based on his felony sentence. Reviewing the sufficiency of the evidence for an abuse of discretion, and viewing the evidence presented at the termination hearing in the light most favorable to upholding the juvenile court's order, we reject this argument. S*ee Mary Lou C. v. Ariz. Dep't of Econ. Sec.*, 207 Ariz. 43, 47, ¶ 8, 83 P.3d 43, 47 (App. 2004) (appellate court reviews sufficiency of the evidence in termination proceeding for an abuse of discretion) (citation omitted); *Ariz. Dep't of Econ. Sec. v. Matthew L.*, 223 Ariz. 547, 549, ¶ 7, 225 P.3d 604, 606 (App. 2010) (appellate court views facts in the light most favorable to upholding the juvenile court's order) (citation omitted).

¶2 Second, Pedro argues, for the first time on appeal, the juvenile court did not make the findings required by the Indian Child Welfare Act ("ICWA"). Although the juvenile court did not make the required ICWA findings, we nonetheless review the juvenile court's findings for fundamental error and find none. *See Ruben M. v. Ariz. Dep't of Econ. Sec.*, 230 Ariz. 236, 239, ¶¶ 13-17, 282 P.3d 437, 440 (App. 2012) (reviewing evidence at termination hearing for fundamental error when respondent parent did not object in the juvenile court).

---

[1]The Legislature has not amended the statutes cited in this memorandum decision since the Arizona Department of Economic Security (the precursor governmental entity to the Department of Child Safety) filed its original dependency petition. Thus, we cite to the current version of the statutes.

**DISCUSSION**

I.      Termination Based on Length of Felony Sentence

¶3          Under A.R.S. § 8-533(B)(4), the juvenile court may terminate the parent-child relationship if "the parent is deprived of civil liberties due to the conviction of a felony . . . if the sentence of that parent is of such length that the child will be deprived of a normal home for a period of years." In evaluating whether termination is warranted under A.R.S. § 8-533(B)(4), a court should consider all relevant factors, including:

> (1) the length and strength of any parent-child relationship existing when incarceration begins, (2) the degree to which the parent-child relationship can be continued and nurtured during the incarceration, (3) the age of the child and the relationship between the child's age and the likelihood that incarceration will deprive the child of a normal home, (4) the length of the sentence, (5) the availability of another parent to provide a normal home life, and (6) the effect of the deprivation of a parental presence on the child[ren] at issue.

*Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 251-52, ¶ 29, 995 P.2d 682, 687-88 (2000). No single factor compels or forbids severance. *Christy C. v. Ariz. Dep't of Econ. Sec.*, 214 Ariz. 445, 450, ¶ 15, 153 P.3d 1074, 1079 (App. 2007).

¶4          Considering these factors here, the evidence presented to the juvenile court at the termination hearing supports its decision to terminate Pedro's parental rights under A.R.S. § 8-533(B)(4). After police took Pedro into custody in December 2013 in Nebraska, Pedro pled guilty to two felony offenses, and the court sentenced Pedro to a prison term of eight to twelve years. Pedro's early release date is April 2019.

¶5          When Pedro's incarceration began in 2013, M.R. was almost six years old, and E.R. was over nine years old. Assuming Pedro will be released in April 2019, by then he will have been incarcerated for roughly half of both of the children's lives. Additionally, regardless of when Pedro is released, he will be released in Nebraska—not Arizona where the children currently live. And, DCS will not be able to place the children with Pedro in Nebraska until after officials assess whether the children may be

3

placed with Pedro pursuant to the Interstate Compact on the Placement of Children, A.R.S. § 8-548 (2014), a process that could take up to six months.

¶6            Before being incarcerated, Pedro saw E.R. and M.R. infrequently—just two to three times per month. The children never stayed overnight with him at his apartment because he had roommates and he did not want his roommates to be around them. During his incarceration, both children were allowed to have telephone contact with Pedro, but both children indicated to the case manager, throughout the dependency proceedings, that they did not wish to have contact with him. Further, the case manager reported that Pedro had "not maintained consistent contact with the department."

¶7            The children's mother's parental rights have also been terminated. Thus, there is no other parent available to provide a normal home life. Finally, the children are currently placed with their grandfather and step-grandmother, and they are willing to adopt the children.

¶8            This evidence supports the juvenile court's termination order, and we will not reweigh the evidence received at the termination hearing here. *See Ariz. Dep't of Econ. Sec. v. Oscar O.*, 209 Ariz. 332, 336, ¶ 14, 100 P.3d 943, 947 (App. 2004) (appellate court will not reweigh the evidence or supersede the juvenile court's assessment of the evidence for its own). Accordingly, the juvenile court did not abuse its discretion in terminating Pedro's parental rights under A.R.S. § 8-533(B)(4).

II.      The Juvenile Court's Findings Under ICWA

¶9            M.R. and E.R. are "Indian child[ren]" as defined by ICWA, 25 U.S.C.A. §§ 1901 to -1963 (West 2016). *See* 25 U.S.C.A. § 1903(4) (Indian child is any unmarried person under the age of eighteen who is either a member of an Indian tribe or eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe). Accordingly, ICWA applies to this case. Under ICWA, the juvenile court must make two findings before terminating parental rights. *Valerie M., v. Dep't of Econ. Sec.*, 219 Ariz. 331, 333, ¶ 3, 198 P.3d 1203, 1205 (2009).

¶10            First, the court must find "that active efforts have been made to provide remedial services and rehabilitative programs designed to prevent the breakup of the Indian family and that these efforts have proved unsuccessful." *Id.* (quoting 25 U.S.C.A. § 1912(d)). Here, the juvenile court found only that DCS "has made *reasonable* efforts to reunify the family." (Emphasis added). The court did not find that DCS made *active* efforts to provide remedial services and rehabilitative programs to the family.

**¶11** Second, there must be a "determination, supported by evidence beyond a reasonable doubt, including testimony of qualified expert witnesses, that the continued custody of the child by the parent or Indian custodian is likely to result in serious emotional or physical damage to the child." *Valerie M.*, 219 Ariz. at 333, ¶ 3, 198 P.3d at 1205 (quoting 25 U.S.C.A. § 1912(f)); Ariz. R.P. Juv. Ct. 66(c) (requiring the same finding). Here, the juvenile court did not make this finding.

**¶12** DCS argues Pedro waived his right to challenge the sufficiency of the juvenile court's findings under ICWA because he did not contest the findings in the juvenile court. When a party fails to object to alleged error in the trial court, however, we can review for fundamental error. *See State v. Henderson*, 210 Ariz. 561, 567-68, ¶¶ 19-20, 115 P.3d 601, 607-08 (2005) (fundamental error applies when a party fails to object to alleged trial error; to establish fundamental error, a party must establish both that error exists and that the error caused that party prejudice). Although the doctrine of fundamental error is rarely used in civil cases, we nonetheless review for fundamental error here because ICWA "mandates certain procedural safeguards and substantive requirements for state court proceedings." *Valerie M.*, 219 Ariz. at 334, ¶ 12, 198 P.3d at 1206; *see Ruben M.*, 230 Ariz. at 239, ¶ 15, 282 P.3d at 440 (fundamental error review appropriate in appeal challenging juvenile court's factual findings).

**¶13** Here, a qualified expert testified, without objection, that DCS has made active efforts to provide remedial services and rehabilitative programs designed to prevent the breakup of the family. The expert also testified that if the children remained in Pedro's custody, they would likely suffer serious emotional or physical damage. Pedro did not challenge the expert's testimony, or present evidence to the contrary, and there is no contrary evidence in the record. Accordingly, Pedro cannot establish he was prejudiced by the juvenile court's failure to make the findings required by ICWA.

## CONCLUSION

**¶14** For the foregoing reasons, we affirm the juvenile court's order terminating Pedro's parental rights to E.R. and M.R.

