NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

AMBERLAYNE S., *Appellant*,

*v.*

DEPARTMENT OF CHILD SAFETY, I.S., S.T., H.S., *Appellees*.

No. 1 CA-JV 18-0391
FILED 3-21-2019

Appeal from the Superior Court in Maricopa County
No. JD12725
The Honorable Karen A. Mullins, Judge

**AFFIRMED**

COUNSEL

Maricopa County Public Advocate's Office, Mesa
By Suzanne W. Sanchez
*Counsel for Appellant*

Arizona Attorney General's Office, Mesa
By Laurie Blevins
*Counsel for Appellee*

_____

## MEMORANDUM DECISION

Presiding Judge James B. Morse Jr. delivered the decision of the Court, in which Judge Jon W. Thompson and Vice Chief Judge Peter B. Swann joined.

_____

**M O R S E**, Judge:

¶1            Amberlayne S. ("Mother") appeals the juvenile court's order terminating her parental rights.  For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2            Mother is the biological parent of I.S., S.T., and H.S. (collectively, the "Children"), born September 30, 2006, March 19, 2008, and April 6, 2009, respectively.[1]

¶3            In October 2013, the Department of Child Safety ("DCS") took temporary custody of the Children due to allegations of Mother's substance abuse.  The Children were adjudicated dependent, but the dependency was later dismissed in July 2015 after Mother successfully participated in substance-abuse treatment.

¶4            Fifteen months later in October 2016, DCS removed the Children from Mother's care again due to Mother's substance abuse.  The Children were placed with their paternal grandmother.  In April 2017, the juvenile court adjudicated the Children dependent again after Mother failed to appear for a pretrial conference.

¶5            Meanwhile, I.S. was diagnosed with autism after exhibiting "severe behaviors with aggression and outbursts towards others and himself."  In June 2017, DCS filed a motion for change in physical custody of I.S.  That same month, a home-study report provided that I.S.'s current placement with paternal grandmother was no longer appropriate due to her inability to parent I.S. along with S.T. and H.S.  The report indicated that I.S. was "pretty violent, acting up, having [the] police called often," and required an individualized education plan for his behaviors, speech therapy, and "one on one therapy."  The juvenile court granted the motion

_____

[1]     The parental rights of I.S.'s biological father and S.T. and H.S.'s biological father were terminated.  Neither father is a party to this appeal.

and I.S. was placed with "family friends" who could better address I.S.'s special needs.

**¶6** DCS referred Mother to a variety of services, including drug testing, domestic-violence classes, and parent-aid services. Mother struggled with the case plan throughout the dependency. She routinely refused services, failed to participate in substance-abuse testing, and did not complete her domestic-violence counselling. Her attendance at scheduled visitation with the Children was sporadic. After November 2017, parent-aid services closed when she stopped attending visitations altogether.

**¶7** In March 2018, DCS moved to terminate Mother's parental rights to the Children. Mother contested the severance.

**¶8** In September 2018, the juvenile court severed Mother's parental rights based upon the statutory grounds of substance abuse, nine months out-of-home placement, and recurrent removal. Ariz. Rev. Stat. ("A.R.S.") § 8-533(B)(3), (8)(a), and (B)(11). The court also found the termination of Mother's rights to be in the Children's best interests. *See* A.R.S. § 8-533(B).

**¶9** Mother timely appealed. We have jurisdiction pursuant to Article 6, Section 9, of the Arizona Constitution, and A.R.S. §§ 8-235(A), 12-120.21(A)(1), and -2101(A).

## DISCUSSION

**¶10** We view the evidence "in a light most favorable to affirming the [juvenile] court's findings." *Maricopa Cty. Juv. Action No. JS-8490*, 179 Ariz. 102, 106 (1994). We will uphold the juvenile court's findings of fact unless they are unsupported by reasonable evidence, and we will affirm a severance order unless it is clearly erroneous. *Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 280, ¶ 4 (App. 2002).

**¶11** Here, Mother does not contest the grounds for severance found by the juvenile court, and only challenges the court's best interests findings. "[A] determination of the child's best interest must include a finding as to how the child would benefit from a severance *or* be harmed by the continuation of the relationship." *Maricopa Cty. Juv. Action No. JS-500274*, 167 Ariz. 1, 5 (1990). This finding requires the juvenile court to consider the totality of the circumstances, *Dominique M. v. Dep't of Child Safety*, 240 Ariz. 96, 99, ¶ 12 (App. 2016), and balances the parent's rights "against the independent and often adverse interests of the child in a safe

and stable home life," *Kent K. v. Bobby M.*, 210 Ariz. 279, 286, ¶ 35 (2005). Severance is not "automatically . . . in a child's best interests just because the child is adoptable," but when "a current placement meets the child's needs and the child's prospective adoption is otherwise legally possible and likely, a juvenile court may find that termination of parental rights, so as to permit adoption, is in the child's best interests." *Demetrius L. v. Joshlynn F.*, 239 Ariz. 1, 4, ¶¶ 12, 14 (2016).

¶12        Mother argues that the juvenile court failed to consider the totality of the circumstances when making its best-interests findings.  She asserts that because the juvenile court did not "expressly consider the disposition of the children's sibling relationship, the court failed to consider the totality of the circumstances when making its best-interests determination."  She argues that the juvenile court was required to find that the Children would continue to maintain frequent contact with one another even after termination of the parent-child relationship.  Failure to consider such findings, she asserts, results in a "fatally defective" termination order.

¶13        The juvenile court considered and weighed the evidence. Based on the totality of the circumstances, the court found severance to be in the Children's best interests, as it would "be a detriment for the Children to have to wait an indeterminate period of time" to see if Mother will engage in drug abuse treatment and successfully complete it.  The juvenile court also found that the Children were adoptable, and their respective placements were the least restrictive placements meeting all of the Children's needs, including I.S.'s special needs.

¶14        At trial, DCS emphasized that I.S.'s current placement was meeting all of his "high needs" as a child on the autism spectrum, as they have experience handling autistic children.  I.S.'s placement previously reported that they are "capable of handling the unique challenges that come with parenting an additional child with autism" and that they will effectively advocate for I.S.'s educational, medical, and behavioral needs. In a January 10, 2018, report, DCS noted that I.S. was assigned to a behavioral coach and therapist and that in November 2017, he was placed on "[d]iversion" after he "punched a teacher during a classroom riot at his behavioral school."  I.S.'s school reported that since then, however, I.S. has "done a 180."

¶15        The Children's placements are willing to adopt them and provide a "safe and stable environment with people they consider their parents and that they see every day."  The Children are able to see each other at visits and their placements ensure they see each other often.

Additionally, since being with his current placement, I.S. has, as his school also previously reported, "completely changed." The court also heard evidence that it would be detrimental to the Children if Mother's parental rights are not terminated given that "Mother has refused services and hasn't been to a visit since October 2017."

**¶16** The juvenile court properly made specific written findings as to why I.S.'s current placement is the least restrictive available and why placement with paternal grandmother was not available. *See* A.R.S. § 8-538(C). The facts at trial support the juvenile court's findings that termination is in the Children's best interests. The juvenile court was not required to expressly find that the Children would be able to maintain their sibling relationship. *See Christy C. v. Ariz. Dep't of Econ. Sec.*, 214 Ariz. 445, 451-52, ¶ 19 (App. 2007) ("When considering the [juvenile] court's express findings, we affirm the [juvenile] court's order if the facts at trial support the [juvenile] court's findings whether or not each supportive fact is specifically called out by the [juvenile] court in its findings."). Furthermore, it would impose "an undue burden and inappropriate task on a trial judge to list *every* fact upon which his or her findings are based." *Id.* at 452, ¶ 19.

**¶17** Because evidence in the record supports the juvenile court's findings that severance of Mother's parental rights is in the Children's best interests, we affirm the juvenile court's best interests findings and order of termination.

## CONCLUSION

**¶18** For the foregoing reasons, we affirm the juvenile court's order terminating the parent-child relationship between Mother and the Children.



AMY M. WOOD • Clerk of the Court
FILED: AA