NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

---

IN RE TERMINATION OF PARENTAL RIGHTS AS TO A.F.

No. 1 CA-JV 23-0175
FILED 3-7-2024

---

Appeal from the Superior Court in Yavapai County
No. S1300SV202300004
The Honorable Anna C. Young, Judge

**AFFIRMED**

---

COUNSEL

Antoine G. Fraga, III, Kingman
*Appellant*

Robert D. Rosanelli Attorney at Law, Phoenix
By Robert D. Rosanelli
*Advisory Counsel for Appellant*

Christina B., Prescott
*Appellee*

---

**MEMORANDUM DECISION**

Judge Cynthia J. Bailey delivered the decision of the Court, in which Presiding Judge Paul J. McMurdie and Judge Maria Elena Cruz joined.

---

**B A I L E Y**, Judge:

¶1         This is an appeal of a private severance action.  Antoine G. Fraga III ("Father"), who filed a *pro se* brief,[1] appeals the termination of his parental rights to his child ("A.F.").[2]  For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2         Father and Christina B. ("Mother") are the biological parents of A.F., born in March 2018.

¶3         In January 2020, Father was arrested and charged with crimes related to having child pornography on his laptop involving an unrelated minor.

¶4         Mother discontinued contact with Father and his family after allegedly receiving a verbal warning from the Department of Child Safety ("DCS") that continued contact with Father could lead DCS to remove A.F. from her care.  She returned the only letter she received from Father.  Although Father and his family members tried to locate Mother, their efforts failed.  Mother began a relationship with another man ("D.B."), who she plans to marry.

¶5         Father pled guilty to three counts of attempted sexual exploitation of a minor and was sentenced to ten years' incarceration in the Arizona Department of Corrections ("ADOC").  Father is projected to be eligible for release in August 2028.  Once released, Father must register as a sex offender and will be on lifetime probation with sex offender conditions.

¶6         In February 2023, Mother, represented by counsel, petitioned to terminate the parent-child relationship between Father and A.F.  Mother alleged Father had abandoned A.F., *see* Ariz. Rev. Stat. ("A.R.S.") § 8-533(B)(1), had neglected or abused a child (his victim), *see* A.R.S. § 8-

---

[1] Although Father was assigned an attorney for his appeal, his attorney filed a "Notice and Avowal in Lieu of Opening Brief," avowing he had reviewed the record on appeal and found no non-frivolous issue to raise.  This court ordered that assigned counsel remain appointed, but only as advisory counsel.

[2] Father's reply brief was due December 20, 2023.  On January 9, 2024, he moved for an extension of time to file his reply brief, but we denied his request.  The next day, he filed his reply brief.  Upon reconsideration, we grant his request and have considered that brief.

533(B)(2), and was unable to parent A.F. due to the length of his incarceration and the nature of his felony convictions, *see* A.R.S. § 8-533(B)(4).  Mother also alleged that termination was in A.F.'s best interests.

**¶7**        The superior court assigned separate counsel for Father and A.F., and Father denied the allegations in the petition.  The court ordered a family social study, to include a specific recommendation about whether the relationship between Father and A.F. should be terminated.  In May 2023, Ashley Mahone, MS, of Hope Study LLC, conducted an in-home visit with Mother, D.B., and A.F., and submitted a report recommending the court terminate Father's parental rights.  Later, Ms. Mahone interviewed Father and filed an addendum to the social study but did not change her recommendation.

**¶8**        Father appeared telephonically at the August 2023 contested severance trial, and both he and Mother testified.  After taking the matter under advisement, the court granted the petition terminating Father's parental rights to A.F. on each statutory ground alleged.  The court also found that Father poses a danger to A.F., and termination would serve A.F.'s best interests.

**¶9**        We have jurisdiction over Father's timely appeal.  *See* A.R.S. §§ 8-235(A), 12-2101(A)(1).

## DISCUSSION

### I.        Standard of Review and Applicable Law

**¶10**        To sever a parent-child relationship, the superior court must find by clear and convincing evidence at least one of the statutory grounds set forth in A.R.S. § 8-533(B) and must find by a preponderance of the evidence that severance is in the child's best interests.  *Raymond F. v. Ariz. Dep't of Econ. Sec.*, 224 Ariz. 373, 376–77, ¶¶ 14–15 (App. 2010).

**¶11**        We review the court's termination order under a two-part analysis: First, we review its factual findings, which we accept if supported by reasonable evidence and inferences.  *Brionna J. v. Dep't of Child Safety*, 255 Ariz. 471, 478, ¶ 30 (2023) (citation omitted).  We do not reweigh conflicting evidence or redetermine credibility, *see Alma S. v. Dep't of Child Safety*, 245 Ariz. 146, 151–52, ¶¶ 18–19 (2018), because the superior court is in the best position to weigh the evidence, observe the parties, judge witnesses' credibility, and resolve disputed facts, *Jordan C. v. Ariz. Dep't of Econ. Sec.*, 223 Ariz. 86, 93, ¶ 18 (App. 2009).  Second, we will affirm the superior

court's legal conclusions about the statutory grounds for termination unless they are clearly erroneous. *Brionna J.*, 255 Ariz. at 478–79, ¶ 31.[3]

II.     Termination Pursuant to A.R.S. § 8-533(B)(4)

¶12     Father argues insufficient evidence supports the termination of his parental rights on the length-of-felony-sentence ground.

¶13     The superior court may terminate parental rights under the length-of-felony-sentence ground if "[t]he parent is deprived of civil liberties due to the conviction of a felony . . . [and] if the sentence of that parent is of such length that the child will be deprived of a normal home for a period of years." A.R.S. § 8-533(B)(4). No bright-line rule exists for determining when a sentence is long enough to deprive a child of a normal home for a period of years. *Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 251, ¶ 29 (2000). Instead, the court

> should consider all relevant factors, including, but not limited to: (1) the length and strength of any parent-child relationship existing when incarceration begins, (2) the degree to which the parent-child relationship can be continued and nurtured during the incarceration, (3) the age of the child and the relationship between the child's age and the likelihood that incarceration will deprive the child of a normal home, (4) the length of the sentence, (5) the availability of another parent to provide a normal home life, and (6) the effect of the deprivation of a parental presence on the child at issue.

*Id.* at 251–52, ¶ 29; *see also Timothy B. v. Dep't of Child Safety*, 252 Ariz. 470, 477, ¶ 27 (2022) (modifying in part the fifth factor). All factors need not support terminating parental rights, nor is there any "threshold level" under each factor that either compels or forbids severance. *Christy C. v. Ariz. Dep't of Econ. Sec.*, 214 Ariz. 445, 450, ¶ 15 (App. 2007).

¶14     In this case, as to the first factor—the length and strength of the parent-child relationship before incarceration—Father was incarcerated when A.F. was less than two years old, and he has since remained in custody. According to Mother, before his incarceration, Father "wasn't the most hands-on parent" and when Mother would return home from work, A.F. would "be filthy, [his] diaper was full, and it was clear he hadn't ate [sic] all day because when [Mother] made dinner [A.F.] would eat so

_____

[3] On appeal, Father does not raise any issue regarding the court's best interests finding, which reasonable evidence supports.

much." She testified that A.F. did not remember Father and considered D.B. his "Dad." Father disputes portions of Mother's testimony and blames Mother and DCS for the lack of any continued communication, but this factor focuses on the relationship before a parent's incarceration. Reasonable evidence supports the court's characterization of Father and A.F.'s relationship as essentially "non-existent."

¶15 As to the second factor—how well the parent-child relationship can be continued and nurtured during Father's incarceration—the court found that "Father has not maintained a normal parent-child relationship during his incarceration" and "the parent-child relationship cannot be nurtured." The record supports those findings.

¶16 Father testified that, after he was incarcerated, Mother helped facilitate his communication with A.F. through phone calls, video visits, cards, and letters, and he had contact with A.F. until September 2021. However, the court did not have to accept his unsupported testimony, *see Aries v. Palmer Johnson, Inc.*, 153 Ariz. 250, 261 (App. 1987), and Father admitted he did not send any gifts or monetary support to Mother or A.F. Mother testified that Father's last contact with A.F. "was probably sometime in March of 2020" and that she had returned unopened the only letter she received from him. When the parties' testimony raises disputed fact issues, we defer to the superior court's ability to weigh the evidence, judge the parties' credibility, and resolve those disputed facts. *Jordan C.*, 223 Ariz. at 93, ¶ 18. And although the record establishes that Mother has resisted helping nurture his relationship with A.F., it is also clear that Father did little to maintain a relationship with A.F. during his incarceration.[4] On this record, the superior court did not abuse its discretion in concluding that Father's relationship with A.F. has not been, and could not be, successfully continued or nurtured during Father's incarceration.

¶17 As to the other factors, A.F. was more than five years old at the time of the severance trial, and Father's projected eligible release date is in August 2028, when A.F. will be about 10.5 years old. *See Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 281, ¶ 8 (App. 2002) (holding that the court must consider the entire sentence length). Thus, A.F. has been, and will be, deprived of a home life with Father for most of his childhood.

---

[4] Father did file a family court case seeking parenting time with A.F., but only after Mother filed the termination petition.

5

¶18　　　　Father argues that A.F. is now in a stable home with Mother and D.B., and he might be able to reunite with A.F. upon his release from prison. *See Timothy B.*, 252 Ariz. at 477, ¶ 27 (defining a "normal home" "as a stable and long-term family environment outside a foster care placement, where another parent or a permanent guardian resides and parents the child, and where the incarcerated parent affirmatively acts to maintain a relationship with the child that contributes to rather than detracts from the child's stable, family environment"). Now as between Father and Mother, only Mother is available to give A.F. a normal home life, and Father has done little to contribute to the stable family environment created by Mother and D.B.

¶19　　　　Moreover, given (1) the nature of Father's felony convictions, (2) that the victim's age in Father's criminal matter was around the same age A.F. will be when Father is released, and (3) that Father was a registered sex offender before his most current arrest and convictions, it is unclear whether Father can contact A.F. upon his release. Once released, Father will be on lifetime probation with sex offender conditions, and at minimum, will require reunification services before he could reunite with A.F.[5] *See Jeffrey P. v. Dep't of Child Safety*, 239 Ariz. 212, 214, ¶ 10 (App. 2016) (recognizing a court may consider circumstances that could delay reunification after release, such as release conditions and the time needed for a parent to complete services after release). Consequently, A.F. has been, and will likely be, deprived of a "normal home" that would include Father for many more years.

¶20　　　　The reasonable evidence supports the court's findings and conclusion that the length of Father's felony sentence will deprive A.F. of a normal home for years. Accordingly, we affirm the order severing Father's parental rights.[6]

---

[5] Father advised Ms. Mahone that he previously "had individualized treatment as a registered sex offender, but it was not helpful," "[t]he facility where he is detained does not offer individual treatment," and "[h]e has not engaged in any other treatment program," though he is participating in a "behavioral changes" group.

[6] Because we affirm based on Father's inability to parent due to length of incarceration, we do not address his arguments challenging severance on the other statutory bases. *See Jesus M.*, 203 Ariz. at 280, ¶ 3 ("If clear and convincing evidence supports any one of the statutory grounds on which

III.    Father's Ineffective Assistance of Counsel Claim

**¶21**    Father argues that his trial counsel was ineffective and he was denied due process by his counsel's alleged failure to (1) "obtain evidence that would refute [M]other's testimony," (2) provide Father with copies of Mother's exhibits, and (3) object to the exhibits' admission into evidence.[7]

**¶22**    In Arizona, a party claiming ineffective assistance of counsel must show: (1) "counsel's representation fell below prevailing professional norms"; and (2) "a reasonable probability exists that, but for counsel's errors, the result of the proceeding would have been different." *John M. v. Ariz. Dep't of Econ. Sec.*, 217 Ariz. 320, 322–23, ¶ 8 (App. 2007) (citation omitted).  In other words, Father must establish both incompetence and prejudice.  *Id.* at 325, ¶ 17.

**¶23**    Arizona courts have not explicitly decided whether a claim of ineffective assistance of counsel may justify relief in a termination proceeding.  *See id.* at 322–24, ¶¶ 8–14.  That said, as in *John M.*, "[f]or the purpose of this case, we need not determine whether Arizona recognizes ineffective assistance of counsel as a separate ground for relief in an appeal of a termination order or resolves an allegation of counsel's inadequacies as a due process claim."  *Id.* at 325, ¶ 17.

**¶24**    Here, we need not consider whether Father has established incompetence because he has failed to show any prejudice.  *See State v. Atwood*, 171 Ariz. 576, 600 (1992) ("If an ineffectiveness claim can be rejected for lack of prejudice, the court need not inquire into counsel's performance." (citation omitted)).  Mother presented substantial evidence that Father's felony sentence will deprive A.F. of a normal home for a period of years, *see* A.R.S. § 8-533(B)(4), and Father does not show how, but for his counsel's alleged errors, the result would have been different.  Accordingly, Father has not established prejudice.

---

the juvenile court ordered severance, we need not address claims pertaining to the other grounds." (citation omitted)).

[7] The three exhibits—admitted without objection by either Father's counsel or counsel for A.F.—included a copy of the social study conducted and prepared pursuant to the superior court's order (Exhibit 1), a single-page copy of Father's on-line public ADOC inmate record (Exhibit 2), and a copy of the addendum to the social study that summarized the interview with Father (Exhibit 3).

IV.      Threat to Remove A.F. from Mother's Care Issue Waived

**¶25**      Father questions the legality of DCS's alleged threats to remove A.F. from Mother's care if she continued to permit contact between Father and A.F.  However, Father has waived this issue by failing to raise it or develop the record in the superior court, or to develop any argument on appeal.  *See Christy C.*, 214 Ariz. at 452, ¶ 21; ARCAP 13(a)(7).  Thus, we do not consider the issue further, except to note that "[t]he primary purpose of [DCS] is to protect children."  A.R.S. § 8-451(B); *see also* A.R.S. § 8-457(B)(1) ("The health and safety of the child is the primary concern.").

## CONCLUSION

**¶26**      The superior court's order terminating Father's parental rights to A.F. is affirmed.



AMY M. WOOD • Clerk of the Court
FILED:     AA