NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

IN RE TERMINATION OF PARENTAL RIGHTS AS TO A.A.

No. 1 CA-JV 24-0011

FILED 07-30-2024

---

Appeal from the Superior Court in Maricopa County
No. JD22293
The Honorable Todd F. Lang, Judge

**AFFIRMED**

---

COUNSEL

Law Office of H. Clark Jones LLC, Mesa
By H. Clark Jones
*Counsel for Appellant Mother*

Maricopa County Public Advocate
By Suzanne W. Sanchez
*Counsel for Appellant Father*

The 928 Law Firm, Flagstaff
By Lindsey Lamey
*Counsel for The Hope Tribe*

Office of the Legal Advocate, Phoenix
By Amanda L. Adams
*Counsel for Child*

Arizona Attorney General's Office, Tucson
By Thomas K. Sanders
*Counsel for Appellee Department of Child Safety*

---

**MEMORANDUM DECISION**

Judge Brian Y. Furuya delivered the decision of the Court, in which Presiding Judge Anni Hill Foster and Vice Chief Judge Randall M. Howe joined.

---

**F U R U Y A**, Judge:

¶1 Lorissa D. ("Mother") and Rudy C. ("Father") (collectively, "Parents") appeal the juvenile court's order terminating their parental rights to their child, A.A. Parents are members of the Hopi Tribe and A.A. is an Indian child subject to the federal Indian Child Welfare Act ("ICWA"). For the following reasons, we affirm.

**FACTS AND PROCEDURAL HISTORY**

¶2 In October 2022, A.A. was born substance exposed and Mother tested positive for methamphetamines. The Department of Child Safety ("DCS") petitioned for dependency shortly after A.A.'s birth based on Mother's and Father's substance abuse. Mother gave DCS different accounts of her substance use, explaining she used methamphetamines two to three times per week but only once during her pregnancy. She also admitted she only sought substance abuse treatment through past involvement with DCS. Father knew about Mother's history of drug use.

¶3 DCS had been involved with Mother and Father regarding their other children. At the time of the dependency petition, Parents did not have stable housing and were periodically homeless.

¶4 In November 2022, Parents attended a preliminary protective hearing where they confirmed they understood failing to attend "every hearing the court sets" could result in losing their rights and failing to attend termination hearings could result in waiver, in absentia hearings, and loss of parental rights. *See* Ariz. R.P. Juv. Ct. Form 1. Parents did not appear at the December 2022 pretrial conference and appeared late at the January 2023 dependency hearing. Parents did not appear at any remaining hearings, which included three report-and-review hearings, the initial

2

termination hearing, and its continuation. Their attorneys, however, attended all hearings.

¶5        During the dependency, DCS "offered, made referrals for, provided, and/or requested" allowances and subsidies, case management services, childcare, medical and dental services, a nurturing parenting program and parenting services, substance abuse assessment and treatment, transportation services, and parenting time. Parents each completed less than ten drug tests, all of which were positive for either methamphetamines, amphetamines, or THC. At the time DCS petitioned for termination, Parents had been evicted from a second sober living home due to drug use. Parents also did not engage in parenting services, all of which had been referred more than once and which had closed out for nonparticipation. Parents' last visit with A.A. was in April 2023, and their referrals for visitation were offered twice and closed out for lack of contact.

¶6        In September 2023, DCS petitioned for termination of Parents' parental rights as to A.A. on three grounds, including the substance abuse ground under Arizona Revised Statute ("A.R.S.") § 8-533(B)(3). Parents received notice of the initial termination hearing, scheduled for October 26, 2023. The notice warned them nonappearance "may result in a finding that you have waived your legal rights and . . . admitted the allegations in the Motion" and failure to appear without good cause may result in the hearing proceeding in their absence and resulting in termination of their parental rights. But they failed to appear at the hearing without good cause.

¶7        During the hearing, an ICWA expert testified Parents did not participate in home visits or parenting services and substance abuse treatment was unsuccessful. The expert also confirmed DCS "made active efforts to provide remedial services and rehabilitative programs designed to prevent the breakup of the Indian family" and "continued custody of the child by the parents [is] likely to result in serious emotional or physical damage." Following the testimony, Parents' attorneys declined to ask any further questions or present any other evidence or testimony. After the court began issuing its findings, DCS requested reopening evidence to present testimony from the DCS case manager. Because the court was "out of time" it continued the hearing to occur on November 30, the next scheduled report-and-review hearing.

¶8        Parents did not appear at the November 30 hearing and the court found no good cause for their absence. The DCS case manager testified Mother has a history of, and continues to struggle with, substance abuse and had not completed substance abuse treatment. Mother's last

drug test was in June 2023. Though Father completed the intake with the substance abuse treatment program, he continued to test positive for methamphetamines and THC. The case manager also confirmed substance abuse impacted has previously impacted Father's ability to parent another child.

**¶9**     Though Father's attorney was present for the entire hearing, Mother's attorney joined nine minutes after the hearing began. After the DCS case manager testified, the court asked Mother's attorney to announce herself and ask any questions. Mother's attorney replied: "No further questions. I did get to hear the substantive portion of [the DCS case manager's] testimony." Father's attorney also declined to ask any questions, present any evidence, or contradict any testimony. Father's attorney added that because he had no contact with Father for "a few months," he had nothing to add.

**¶10**     The court found DCS proved all three severance grounds by clear and convincing evidence, and, by a preponderance of evidence, termination was in A.A.'s best interests. The court further found "evidence established beyond a reasonable doubt, including expert testimony of [an ICWA expert] that the continued custody of the child by Mother and Father is likely to result in serious emotional or physical damage to the child." Additionally, the court found evidence also supported finding DCS made "active efforts . . . to provide remedial services and rehabilitative programs designed to prevent the break-up of the Indian family and these efforts have proved unsuccessful." Ultimately, the court terminated the parent-child relationship between A.A. and Parents on the three grounds alleged by DCS.

**¶11**     We have jurisdiction over Parents' timely appeals under Article 6, Section 9 of the Arizona Constitution and A.R.S. §§ 8-235 and 12-120.21(A), -2101(A)(1).

## DISCUSSION

### I.     The Juvenile Court Did Not Violate Parents' Due Process Rights.

**¶12**     Generally, we review constitutional due process issues de novo. *Brenda D. v. Dep't of Child Safety*, 243 Ariz. 437, 442 ¶ 15 (2018). However, when a party waives a due process issue by failing to raise it to the juvenile court, we review the issue for fundamental error. *See id.* at 447 ¶ 37. To prove fundamental error, a party must show the error: (1) exists; (2) is fundamental; and (3) caused prejudice. *Id.* at 447–48 ¶ 38. To prove prejudice, the parent must affirmatively show, but for the error, a

reasonable factfinder could have reached a different outcome. *Id.* at 448 ¶ 38.

**¶13**         Parents have a due process right to notice of the initial termination hearing. *See* Ariz. R.P. Juv. Ct. 351(c), 352(f)(1)(A). Notice "need not be served personally on the parent or by publication, . . . but may be served on the parent's attorney." *Mara M. v. Ariz. Dep't of Econ. Sec.*, 201 Ariz. 503, 507 ¶ 22 (App. 2002). The notice must warn the parent

> that failure to appear at the initial hearing . . . without good cause may result in a finding that the party has waived legal rights and will be deemed to have admitted the allegations in the petition or motion for termination of parental rights, and that the hearing may go forward in the absence of the parent and may result in the termination of parental rights based upon the record and evidence presented.

Ariz. R.P. Juv. Ct. 351(c)(2). Unless a parent appears before the end of the hearing, "the waiver of the parent's legal rights is effective throughout the hearing" to the "close of evidence, when the matter is submitted for the court's decision." *Brenda D.*, 243 Ariz. at 444 ¶ 24. At that point, "the parent will be deemed to have admitted the factual allegations in the motion." *Id.*

**¶14**         Parents do not dispute they had notice and appropriate warning of the October 26 initial termination hearing. Instead, they argue they did not get notice of the November 30 continuation and "no legal authority" allows courts to proceed in absentia for a report-and-review hearing or "carry[] forward" or "preserve" a parent's nonappearance.

**¶15**         Due process, however, did not require individual notice to Parents of the termination hearing's continuance. The court had authority to proceed in Parents' absence because they: (1) failed to appear without good cause; (2) had notice of the initial termination hearing; and (3) were warned their failure to appear could result in waiver of their rights, including the termination of their parental rights. *See* Ariz. R.P. Juv. Ct. 352(f)(1). And though nothing in the rules requires additional notice of a continuation, Parents and their attorneys had notice of the November 30 report-and-review hearing. Moreover, their attorneys knew the court intended to take evidence at the November 30 hearing.

**¶16**         Father also claims he arrived 15 minutes "after the hearing concluded." Nothing in the record shows his late arrival. But, even if true, the fact is irrelevant because a parent must arrive *before the conclusion* of the hearing to preserve any rights. *See Brenda D.*, 243 Ariz. at 444, 448 ¶¶ 24, 41–

42. Therefore, the court did not err by conducting the termination hearing in absentia or by continuing it across two days.

**¶17**      Regardless of a parent's attendance, counsel "has a right to fully participate in the hearing on the parent's behalf, including a right to cross-examine the state's witnesses, object to proffered evidence, and present witnesses or other evidence." *Brenda D.*, 243 Ariz. at 428 ¶ 30. Conducting a termination hearing without a parent's counsel violates due process. *See id.* at 447 ¶ 36.

**¶18**      Citing *Manuel M. v. Ariz. Dep't of Econ. Sec.*, Father contends counsel may contest factual allegations only if parents are present. 218 Ariz. 205, 213–14 ¶ 28 (App. 2008). But nothing in *Manuel M.* or any other case establishes such a rule. Rather, regardless of a parent's appearance, counsel may contest factual allegations. *See Brenda D.*, 243 Ariz. at 428 ¶ 30.

**¶19**      Mother argues the court violated her due process rights because, on November 30, it conducted some initial proceedings and testimony without her counsel. But Mother's counsel did not object, saying she had "[n]o further questions" and had "hear[d] the substantive portion of [the DCS case manager's] testimony." Thus, Mother has not shown any prejudice, and consequently has not shown fundamental error. *See id.* at 447–48 ¶ 38. On this record, Parents have not shown the court violated their due process rights.

## II.      Sufficient Evidence Supports the Termination Order.

**¶20**      DCS argues Parents waived their objection to the court's factual findings by raising the issue for the first time on appeal. "Generally, failure to raise an argument in the juvenile court waives the issue on appeal." *Logan B. v. Dep't of Child Safety*, 244 Ariz. 532, 536 ¶ 9 (App. 2018). This includes "when a party first raises the issue of insufficient findings on appeal and the order includes at least some statutorily required factual findings." *Id.* at 536 ¶ 10. "[T]he decision to find waiver is discretionary." *Id.* at 536 ¶ 9.

**¶21**      Here, the order contains supportive factual findings. *See, e.g., Antonio M. v. Ariz. Dep't of Econ. Sec.*, 222 Ariz. 369, 371 ¶¶ 5–6 (App. 2009) (finding waiver where party challenged specificity of factual findings for the first time on appeal, and the order contained some factual findings). But Parents' apparent waiver does not relieve the court of its duty to determine whether DCS met its burden and to submit the ultimate facts it relied on for its legal conclusions in writing. *See Logan B.*, 244 Ariz. at 539 ¶ 20. And when reviewing an order for termination of parental rights, we must "evaluate all

the statutory elements found by the juvenile court." *Brionna J. v. Dep't of Child Safety*, 255 Ariz. 471, 478 ¶ 26 (2023). Thus, we review the merits of this issue.

**¶22** In reviewing the termination of parental rights, we accept the court's factual findings "if reasonable evidence and inferences support them." *Id.* at 478 ¶ 30 (citation omitted). "[W]e affirm the trial court's order if the facts at trial support the trial court's findings whether or not each supportive fact is specifically called out by the trial court in its findings." *Christy C. v. Ariz. Dep't of Econ. Sec.*, 214 Ariz. 445, 451–52 ¶ 19 (App. 2007). We will affirm the court's legal conclusions if supported by the appropriate quantum of evidence and if not "clearly erroneous." *Brionna J.*, 255 Ariz. at 478–79 ¶ 31. "[T]he question of whether the statutory factor is supported by the mandated quantum of evidence will not be disturbed unless [we] determine[] 'as a matter of law that no one could reasonably find the evidence to be [that applicable quantum].'" *Id.* at 479 ¶ 31 (quoting *Murillo v. Hernandez*, 79 Ariz. 1, 9 (1955)).

**¶23** Orders "terminating the parent-child relationship . . . shall be in writing and shall recite the findings on which the order is based." A.R.S. § 8-538(A); *see also* Ariz. R.P. Juv. Ct. 353(h) ("At the conclusion of the [termination] hearing, the court must . . . enter findings on whether the petitioner or moving party has met its burden of proof and, if so, . . . make specific findings of fact in support of the termination of parental rights.").

**¶24** To terminate parental rights, the court must conclude the petitioner has proved: (1) "by clear and convincing evidence that at least one of the statutory grounds for termination is met"; and (2) "by a preponderance of the evidence that severance of parental rights would be in the best interest of the child." *Ruben M. v. Ariz. Dep't of Econ. Sec.*, 230 Ariz. 236, 240 ¶ 22 (App. 2012).[1]

**¶25** ICWA requires two additional findings. First, the court must find "beyond a reasonable doubt, with evidence that must include testimony from a qualified expert witness, that continued custody of an Indian child by the parent or Indian custodian is likely to result in serious emotional or physical damage to the child." Ariz. R.P. Juv. Ct. 353(d)(1); 25 U.S.C. § 1912(e). Expert testimony must support, but need not be the sole basis for, the court's conclusion. *Brenda O. v. Ariz. Dep't of Econ. Sec.*, 226

---

[1] *Ruben M.* refers to Arizona Rule of Procedure for the Juvenile Court ("Rule") 66, which was replaced by Rule 353 in 2021 and became effective in 2022. The rule changes were not substantive.

Ariz. 137, 142 ¶ 23 (App. 2010). Second, the court must find "by clear and convincing evidence that active efforts have been made to provide remedial services and rehabilitative programs designed to prevent the breakup of an Indian family and that those efforts have proven unsuccessful." Ariz. R.P. Juv. Ct. 353(d)(2); 25 U.S.C. § 1912(d).

**¶26**        Parents assert insufficient evidence supported the court's future-harm determination because the ICWA expert's testimony was conclusory, and the court made no other supporting factual findings. True, the ICWA coordinator did state that "continued custody of the child by the parents [is] likely to result in serious emotional or physical damage." But she did so after recounting A.A. was born substance-exposed, DCS offered parenting and substance abuse services, but such efforts were unsuccessful. Further, the record otherwise supports finding continued custody by Parents would likely cause harm because Parents continue to struggle with substance abuse and do not have stable housing. And a reasonable person may deem this evidence sufficient to establish the evidentiary quantum at issue. *Brionna J.*, 255 Ariz. at 479 ¶ 31.

**¶27**        On this record, we find no error in the court's conclusion, based on the record and the ICWA expert's testimony, continued custody of A.A. by Parents "is likely to result in serious emotional or physical damage to [A.A.]."

**¶28**        Active efforts require more than creating a plan for reunification but do not require DCS to "force a parent to participate in recommended services." *Yvonne L. v. Ariz. Dep't of Econ. Sec.*, 227 Ariz. 415, 423 ¶ 34 (App. 2011). Thus, Father's citation to *Matter of D.J.S.*, 456 P.3d 820, 837 ¶ 79 (Wash. App. 2020), to argue otherwise is inapposite as contrary to Arizona law. However, DCS must "provide parents with the necessary 'time and opportunity to participate in programs designed to help [them] become' effective parents." *Yvonne L.*, 227 Ariz. at 423 ¶ 34 (quoting *Maricopa Cnty. Juv. Action No. JS-501904*, 180 Ariz. 348, 353 (App. 1994)).

**¶29**        Father argues DCS's termination motion contained allegations of diligent efforts, not active efforts. Specifically, he contends DCS offered services, "became aware that Father was struggling to fully engage in the offered services," and then "sat back and failed to help Father enhance his participation." Mother also adopts these arguments.

**¶30**        The record shows, however, DCS offered services and provided Parents time and opportunity to engage in those services, but Parents did not engage. The ICWA expert and DCS case manager testified

to these efforts. Because, as a matter of law, DCS is not required to compel parents' participation in services, *id.*, on this record, the court did not err by finding DCS made active efforts to prevent the break-up of the Indian family, but such efforts were unsuccessful.

**¶31** Though Parents do not challenge the factual findings supporting the termination grounds or the court's best-interests finding, the record shows sufficient evidence supports the substance abuse ground under A.R.S. § 8-533(B)(3) and the best-interests finding. We need not address the other grounds. *See* A.R.S. § 8-533(B) (termination requires satisfying "any one of the" termination grounds and finding termination is in the child's best interests); *see also Crystal E. v. Dep't of Child Safety*, 241 Ariz. 576, 577–78 ¶ 5 (App. 2017).

## CONCLUSION

**¶32** We affirm.

