NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

---

IN RE TERMINATION OF PARENTAL RIGHTS AS TO M.L.

No. 1 CA-JV 24-0048

FILED 10-01-2024

---

Appeal from the Superior Court in Coconino County
No. S0300SV202300029
The Honorable Angela R. Kircher, Judge

**VACATED AND REMANDED**

---

COUNSEL

Harris & Winger P.C., Flagstaff
By Chad Joshua Winger
*Counsel for Appellant*

Krystal S., Flagstaff
*Appellee*

_____

**MEMORANDUM DECISION**

Presiding Judge Brian Y. Furuya delivered the decision of the Court, in which Judge James B. Morse Jr. and Judge David D. Weinzweig joined.

_____

**F U R U Y A**, Judge:

**¶1**        Jorden L. ("Father") appeals the juvenile court's order terminating his parental rights to his child, M.L., for abandonment under Arizona Revised Statutes ("A.R.S.") § 8-533(B)(1). We vacate the termination order and remand for the court to make additional findings.

## FACTS AND PROCEDURAL HISTORY

**¶2**        Krystal S. ("Mother") and Father are the biological parents of M.L., born in July 2018. They began living together a few months before M.L.'s birth, and for a short period they were both involved in raising her. In February 2019, however, the parents separated after Father was arrested for committing domestic violence against Mother. She obtained an order of protection against him, restricting his contact with her to emails about M.L.

**¶3**        Despite their separation, Mother emailed Father a link to register with a co-parenting app called AppClose so that they could safely communicate about M.L. She also offered him a visit with M.L. on Father's Day 2019.  Father never registered to use the app and declined the Father's Day visit because he was concerned about violating the order of protection.

**¶4**        In April 2020, at the onset of the COVID-19 pandemic, Father emailed Mother asking about M.L.'s well-being and requesting parenting time. Mother refused because she felt it was not safe for M.L. to see him in person given the current stay-at-home orders. She also told him she would only discuss his parenting time through the court system. In lieu of in-person contact, she began to email him updates about M.L. every-other week. She stopped sending these updates after about two months because he never responded.

**¶5**        In April 2023, Mother received a letter from the Arizona Department of Economic Security stating Father had petitioned to modify his child support obligation. Concerned he would seek parenting time with M.L., Mother petitioned to terminate his parental rights three months later.

¶6            The juvenile court held a termination trial in February 2024.  Mother testified that Father has not seen M.L. or sent cards or gifts in over five years. She testified she did not believe Father would remain involved if he "interject[ed]" in M.L.'s life. Mother was concerned about Father's contact with M.L. because he was physically and verbally abusive towards Mother, and she had witnessed him be aggressive towards others. She also expressed concern about Father's history of substance abuse.

¶7            Mother further testified about meeting her fiancée, Torii, in 2021. Mother testified Torii has a close relationship with M.L., who calls Torii "Mom." Mother explained she and Torii plan to marry in November 2024, after which Torii would adopt M.L. Mother opined termination would ensure M.L. remains in a safe and healthy home where she is happy and loved by two parents and would prevent M.L. from going to a "stranger" with "a history" should something happen to Mother.

¶8            Father's sister testified she was worried about M.L. seeing Father because he used illegal substances. The sister stated Father was verbally abusive and occasionally violent with her, her brothers, and her father.

¶9            Father's ex-girlfriend, Jessica, testified Father was an absentee parent to their mutual son, K.L., and Father "just kind of dropp[ed] in and out of [their] child's life[.]" Jessica testified their son, who was 18 years old at the time of trial, suffered emotional harm and needed counseling because Father abandoned him. She was concerned about Father being with M.L. because he was abusive, angry, financially unstable, and used illegal substances while they were together.

¶10           Torii testified she loves M.L. and M.L. calls her "Mom." Torii expressed her desire to adopt M.L. and her concern that if something happened to Mother, M.L. would lose her stable home.

¶11           After Mother's witnesses, Father testified about his efforts to be a part of M.L.'s life. He explained that after separating from Mother, on the advice of counsel, he waited until the order of protection expired before seeking parenting time. After it expired, he emailed Mother asking to see M.L., but Mother declined his request because of the pandemic. He researched establishing parenting time through the family court, and even moved to Phoenix to file paperwork because Mother lived there for a brief time, but never filed a petition. He also testified he tried to mail cards and gifts to M.L., but that after they were returned to him, he decided to collect and share them with M.L. later.

¶12        Father testified he did his best to pay child support over the years, but he suffered work-related injuries in 2020 and 2022, which made it hard for him to pay child support. He explained he filed to modify child support in April 2023 because he needed to advocate for himself and to save money for a lawyer to establish his parenting time.

¶13        Father testified that after his arrest in 2019, he participated in court-ordered anger management counseling, drug counseling, and voluntarily pursued individual counseling. He wanted to be in M.L.'s life to prevent her from suffering the harm he caused K.L. by abandoning him. He also stated he was happy M.L. was in a loving family and did not intend to disrupt her family.

¶14        After close of testimony and argument, the court ruled from the bench, finding that Mother proved by clear and convincing evidence that Father abandoned M.L. per A.R.S. § 8-533(B)(1) and Mother proved by a preponderance of the evidence that termination of his parental rights is in M.L.'s best interests. A.R.S. § 8-533(B). The court signed a minute entry order terminating Father's parental rights. Father timely appealed and we have jurisdiction. A.R.S. §§ 8-235(A), 12-120.21(A), 12-2101(A); Ariz. R.P. Juv. Ct. 601(a).

¶15        While Father's appeal was pending, he filed an unopposed motion to stay the appeal and revest jurisdiction in the juvenile court so it could make written findings about the facts it relied on in deciding to terminate his parental rights. After the court entered an amended termination order, Father requested that we clarify whether the court's amended order contained sufficient factual findings to make it an appealable final order. Because the court's amended order contained some factual findings, we lifted the stay and left the issue of the sufficiency of those findings to be resolved as part of the merits of the appeal.

## DISCUSSION

¶16        A parent's right to custody and control of his or her child, while fundamental, is not absolute. *Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 248–49 ¶¶ 11–12 (2000). The juvenile court may terminate the parent-child relationship if the petitioner proves by clear and convincing evidence at least one of the statutory grounds set forth in A.R.S. § 8-533(B). *Brionna J. v. Dep't of Child Safety*, 255 Ariz. 471, 474 ¶ 1 (2023). The court must also find by a preponderance of the evidence that termination is in the child's best interests. *Id.*

4

**¶17** Father challenges only the court's finding that termination of his parental rights was in M.L.'s best interests. He has therefore waived review of the court's finding he abandoned M.L., which finding is supported by the record. A.R.S. § 8-533(B)(1); *see Crystal E. v. Dep't of Child Safety*, 241 Ariz. 576, 577–78 ¶ 5 (App. 2017).

**¶18** We review a best-interests determination for an abuse of discretion and reverse only if there is "no reasonable evidence to support [the factual findings]." *Mary Lou C. v. Ariz. Dep't. of Econ. Sec.*, 207 Ariz. 43, 47 ¶ 8 (citations omitted). When considering the child's best interests, the court must consider the totality of the circumstances, which include the child's stability and security. *Alma S. v. Dep't of Child Safety*, 245 Ariz. 146, 150–51 ¶ 13 (2018). To prove that termination is in the child's best interests, the petitioner must show either: (1) the child will benefit from the termination; or (2) the child will be harmed if the termination is denied. *Id.* at 150 ¶ 13. The court may find a child would benefit from termination if there is an adoption plan or if the child is adoptable. *Demetrius L. v. Joshlynn F.*, 239 Ariz. 1, 3–4 ¶ 12 (2016). The court may also find that a child will benefit from the permanency and stability an adoption would provide. *Ariz. Dep't of Econ. Sec. v. Oscar O.*, 209 Ariz. 332, 337 ¶ 16 (App. 2004).

**¶19** In addition to these requirements, under A.R.S. § 8-538(A), "[e]very order of the court terminating the parent-child relationship . . . shall be in writing and shall recite the findings on which the order is based[.]" By enacting this statute, "the legislature has imposed significant procedural safeguards to ensure due process" recognizing the fundamental rights at stake in a termination proceeding. *Ruben M. v. Ariz. Dep't of Econ. Sec.*, 230 Ariz. 236, 240 ¶ 21 (App. 2012). The statute's requirement of written findings also enables us to determine exactly which issues the court decided and whether the court correctly applied the law. *Id.* at 240 ¶ 24. The court does not need to detail each fact that supports its ruling. *Christy C. v. Ariz. Dep't of Econ. Sec.*, 214 Ariz. 445, 451–52 ¶ 19 (App. 2007). But the court's findings must include all the "ultimate facts" it relied on in reaching its decision. *Ruben M.*, 230 Ariz. at 241 ¶ 25; *see also* Ariz. R.P. Juv. Ct. 353(h)(2)(A) (requiring "at least one factual finding sufficient to support each of those conclusions of law.").

**I.** **The Juvenile Court Abused Its Discretion by Terminating Father's Parental Rights Without Reciting the Factual Basis for Its Best-Interests Finding.**

**¶20** In this case, the juvenile court's amended termination order recites two separate best-interests findings:

> The Court [ ] FINDS, by a preponderance of the evidence, it is in [M.L.]'s best interests for parental rights of [Father to] be terminated and that sole custody of [M.L.] be vested in [Mother].

¶21 Father argues the only reasonable construction of this finding is that terminating his parental rights was in M.L.'s best interests "so that" Mother can have "forever" sole custody. He asserts that depriving the family court of jurisdiction to address parenting time is not a legally sufficient reason to support a best-interests finding. And in any event, he argues Mother is not yet married, and therefore her fiancée cannot legally adopt M.L. *See* A.R.S. § 8-117(B), (C). Lastly, he argues terminating his parental rights caused M.L. to lose a legal parent without having another parent to step into that role. A.R.S. §§ 8-117(B), -539 ("An order terminating the parent-child relationship shall divest the parent and the child of all legal rights . . . except the right of the child to inherit and support from the parent. This right of inheritance and support shall only be terminated by a final order of adoption.").

¶22 Mother counters that the "ultimate fact" supporting the court's legal conclusion that the termination is in M.L.'s best interests is the court's finding and order granting Mother sole custody. But unlike Father, she argues this finding is both legally sufficient and supported by reasonable evidence. She directs us to evidence Father abandoned K.L., Father's history of substance abuse, drug-related felony convictions, aggressive and violent behaviors, and financial instability. And while conceding they are not yet married, Mother also points to evidence she and Torii have firm plans to marry in November 2024 and plans for Torii to adopt M.L. once possible.

¶23 Both Father's and Mother's positions miss the point. Though phrased as a finding, the court's order states legal conclusions. Specifically, its use of the conjunction "and" suggests two separate legal conclusions: (1) it is in M.L.'s best interests to terminate Father's and M.L.'s parent-child relationship; and (2) it is in M.L.'s best interests to vest sole custody in Mother. *See* Webster's II New College Dictionary (2001) (defining "and" as "Together or along with: as well as — Used to connect . . . or clauses that have the same grammatical function in a construction"). Because the court's use of "and" in its amended order is clear and unambiguous, we apply its plain meaning as written. *Cohen v. Frey*, 215 Ariz. 62, 66 ¶ 10 (App. 2007); *cf. Logan B. v. Dep't of Child Safety*, 244 Ariz. 532, 537 ¶ 12 (App. 2018) ("When the text is clear and unambiguous, we apply the plain meaning and our inquiry ends."). Because its clauses are separate, the order's best-interests

determination states legal conclusions that do not satisfy the statutory requirement for the court to make supportive factual findings. *See* A.R.S. § 8-538(A). Noncompliance requires remand to correct the omission. *Logan B.*, 244 Ariz. at 537 ¶ 14.

### A. The Juvenile Court's Abandonment Findings Do Not Support Its Best-Interests Determination.

**¶24** Mother argues the court's written findings concerning abandonment "dually inform" its legal conclusions under A.R.S. § 8-533(B) that Father abandoned M.L. and that termination is in her best interests.

**¶25** However, in a termination proceeding, we may not "assume that a child will benefit from termination simply because [s]he has been abandoned." *Demetrius L.*, 239 Ariz. at 4 ¶ 14 (internal quotations omitted). Because abandonment is a fact that by itself is insufficient to establish what is in a child's best interests, the court's best-interests analysis must be informed by factual findings that go beyond what is necessary to show abandonment.

**¶26** Here, Mother relies on four findings of fact the court used to support its conclusion of abandonment:

> 3. [M.L.] was born on July 3, 2018, to [Mother] and [Father]. Father was initially involved in caring for his child until a Domestic Violence incident resulted in separation.

> 4. [Father] ceased contact with [M.L.] shortly thereafter.

> 5. Despite [Mother]'s considerable efforts to engage [Father] in co-parenting (i.e. email updates, co-parenting app messages) [Father] made no efforts to see or communicate with his daughter. [. . . .]

> 8. [M.L.] has no relationship with [Father]. [M.L.] was five years old at the time of the termination trial and has not seen him since she was an infant.

Although these findings sufficiently support the court's legal conclusion about abandonment, they are not "ultimate facts" the court could have relied on to reach its best-interests determination. The first of these findings, that Father committed an act of domestic violence against Mother, does not mention M.L. or explain how her best interests were affected by the incident. The next two findings—that he ceased contact with her after his

arrest for domestic violence and, afterwards, made no efforts to see or contact her—do not suggest this abandonment harmed M.L. or otherwise affected her best interests. And the finding that M.L. has no relationship with her father because she has not seen him since she was an infant just restates the definition of abandonment, albeit in reverse—*i.e.*, that he failed to maintain "regular contact" or "a normal parental relationship with the child[.]" A.R.S. § 8-531(1).

¶27        Regarding this last finding, Mother argues that, in the absence of written findings, we should consider that when the court ruled from the bench, it told Father that "[M.L.] has a family. She doesn't know you. And I think that's more than enough for best interests." But under A.R.S. § 8-538(A), we are prohibited from speculating as to what evidence the court might have relied on in concluding that termination was in M.L.'s best interests. Further, we may not "ignore the requirement of written findings and simply search the record to uncover ultimate facts the court may have relied upon, or infer findings the court may have made, in reaching the decision to enter an order of termination." *Logan B.*, 244 Ariz. at 538 ¶ 17.

## CONCLUSION

¶28        We therefore vacate the juvenile court's termination order and remand for the court to enter written findings of fact to support its conclusion regarding M.L.'s best interests, as required by A.R.S. § 8–538(A). In the juvenile court's discretion, it may enter these findings on the existing record or reopen evidence and require the parties to present additional information for its consideration. We express no opinion about whether the evidence in the record is sufficient to support a finding that termination of the parent-child relationship is in M.L.'s best interests.

**M O R S E,** Judge, concurring in the result:

¶29        I am persuaded by the dissent in *Logan B.* that an appellant can waive arguments that a termination order failed to include written findings required by A.R.S. § 8-538(A). *See* 244 Ariz. at 540–42 ¶¶ 24–32 (Brown, J., dissenting). And this case seems to present an appropriate situation in which to find waiver. At Father's request, we have already once revested jurisdiction in the superior court to make written findings. Then Mother submitted, and the superior court adopted, proposed findings of fact. But our record on appeal does not reflect any objection from Father to those findings. *See id*. at 541 ¶ 29 (Brown, J., dissenting) (noting that an

objection "would have given the juvenile court the opportunity to address, in the first instance, the error Father now asserts on appeal").

¶30        Unfortunately, Mother does not argue that *Logan B.* was wrongly decided nor argue that Father waived his argument by failing to object to her proposed findings of fact. Therefore, I concur in the result.



AMY M. WOOD • Clerk of the Court
FILED:   AGFV