NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

IN RE TERMINATION OF PARENTAL RIGHTS AS TO J.G.

No. 1 CA-JV 25-0124

FILED 02-04-2026

Appeal from the Superior Court in Maricopa County
No. JS521137
The Honorable Michael C. Blair, Judge

**AFFIRMED**

COUNSEL

Denise L. Carroll, Esq., Scottsdale
By Denise L. Carroll
*Counsel for Appellant Jesse G.*

Stuart & Blackwell, PLLC, Chandler
By Cory A. Stuart
*Counsel for Appellees Matthew R. and Angela R.*

**MEMORANDUM DECISION**

Judge Cynthia J. Bailey delivered the decision of the Court, in which
Presiding Judge Daniel J. Kiley and Judge D. Steven Williams joined.

**B A I L E Y**, Judge:

¶1        This is a private severance action in which the superior court terminated a father's parental rights due to his incarceration and the child's prospective adoption by a stepparent. We affirm because the court properly found termination warranted based on Arizona Revised Statutes ("A.R.S.") § 8-533(B)(4) and the child's best interests.

## FACTS[1] AND PROCEDURAL HISTORY

¶2        J.G. ("Child") was born to Angela R. ("Mother") and Jesse G. ("Father") in late 2019. When Child was four months old, Father was arrested and jailed for sexually exploiting Mother's minor sister. In 2021, he was sentenced to a twenty-year prison term.

¶3        Mother and Father agreed to a parenting plan. Father's rights under the plan were limited to one visit per month with Child, with the paternal grandmother ("Grandmother") to transport Child to the prison. The visits, however, were not consistent. By Mother's estimation, Father met with Child only four times before she stopped the visits at Child's request in late 2024; by Father's estimation, he met with Child between eleven and nineteen times. Father never sought to enforce his parenting time or otherwise arrange more contact with Child. Nor did he send Mother money, cards, letters, or gifts for Child.

¶4        Mother regularly allowed Grandmother to spend time with Child until early 2025. Grandmother arranged for Child to have phone calls with Father, and she gave Child drawings and a birthday card that Father sent for him. Father could not approximate the number of calls he had with Child beyond "quite a few." According to Father, all his interactions with Child were positive and loving, and Child told him he wanted Father "to be his [only] dad."

¶5        Matthew R. ("Stepfather") began living with Mother and acting as Child's father in mid-2021, with the couple ultimately marrying and having children. Child has a close, parent-child-like relationship with Stepfather and calls him "Dad." Both Stepfather and Mother want him to adopt Child as soon as possible, and all evidence suggests he is qualified to do so.

---

[1] We view the facts in the light most favorable to upholding the superior court's order. *Ariz. Dep't of Econ. Sec. v. Matthew L.*, 223 Ariz. 547, 549, ¶ 7 (App. 2010).

**¶6**　　　　In early 2025, Mother and Stepfather petitioned the superior court to terminate Father's parental rights on multiple grounds, including the length of Father's incarceration under A.R.S. § 8-533(B)(4). Father contested the petition.

**¶7**　　　　After a termination adjudication hearing, the superior court granted termination, finding it warranted under A.R.S. § 8-533(B)(4) by clear and convincing evidence, and finding it in Child's best interests by a preponderance of the evidence. We have jurisdiction over Father's timely appeal under A.R.S. §§ 8-235(A), 12-120.21(A)(1), and 12-2101(A)(1).

## DISCUSSION

**¶8**　　　　To terminate parental rights, the superior court must find by clear and convincing evidence that a ground for termination exists under A.R.S. § 8-533(B), and must find by a preponderance of the evidence that termination serves the child's best interests. *Alma S. v. Dep't of Child Safety*, 245 Ariz. 146, 149-50, ¶ 8 (2018). On review, we must accept the superior court's factual findings so long as they are supported by reasonable evidence and inferences. *Brionna J. v. Dep't of Child Safety*, 255 Ariz. 471, 478, ¶ 30 (2023). We do not reweigh the evidence; instead, we defer to the superior court's determinations on conflicting evidence and witness credibility. *Id.*; *Alma S.*, 245 Ariz. at 151, ¶ 18. We will affirm the superior court's legal conclusions regarding a statutory basis for termination unless they are clearly erroneous. *Brionna J.*, 255 Ariz. at 479, ¶ 31.

I.　　The superior court properly found grounds for termination under A.R.S. § 8-533(B)(4).

**¶9**　　　　Father first argues that the superior court erred by finding termination warranted under A.R.S. § 8-533(B)(4). Section 8-533(B)(4) provides for termination when "the parent is deprived of civil liberties due to the conviction of a felony" and "the sentence of that parent is of such length that the child will be deprived of a normal home for a period of years." The parent's physical absence does not itself deprive the child of a "normal home." *Timothy B. v. Dep't of Child Safety*, 252 Ariz. 470, 476-77, ¶¶ 24-26 (2022). A "normal home" can consist of "a stable and long-term family environment . . . where another parent or a permanent guardian resides and parents the child, and where the incarcerated parent affirmatively acts to maintain a relationship with the child that contributes to rather than detracts from the child's stable, family environment." *Id.* at 477, ¶ 27.

**¶10** Whether the child will be deprived of a "normal home" for years due to the length of the incarcerated parent's sentence is not subject to bright-line definition. *Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 251, ¶ 29 (2000). Instead, each case must be considered on its facts. *Id.* The relevant factors include:

> (1) the length and strength of any parent-child relationship existing when incarceration begins, (2) the degree to which the parent-child relationship can be continued and nurtured during the incarceration, (3) the age of the child and the relationship between the child's age and the likelihood that incarceration will deprive the child of a normal home, (4) the length of the sentence, (5) the availability of another parent [or permanent guardian] to provide a normal home life, and (6) the effect of the deprivation of a parental presence on the child at issue.

*Id.* at 251-52, ¶ 29 (as modified by *Timothy B.*, 252 Ariz. at 477, ¶ 27). No factor is determinative, and termination may be warranted even if multiple factors favor continuing the parental relationship. *Jessie D. v. Dep't of Child Safety*, 251 Ariz. 574, 579, ¶ 9 (2021); *see also Christy C. v. Ariz. Dep't of Econ. Sec.*, 214 Ariz. 445, 450, ¶ 15 (App. 2007). "Similarly, there is no threshold level under each individual factor . . . that either compels, or forbids, severance." *Christy C.*, 214 Ariz. at 450, ¶ 15.

**¶11** Father contends that the superior court ignored the definition of a "normal home" and the factor-based analysis, and instead focused on the length of his sentence. He emphasizes that at the start of the trial, the court stated it was "interested just legally speaking . . . . [H]ow are you getting around [A.R.S. § 8-533(B)(4)], if [Father]'s not even going to be out until the child's almost an adult?" But he ignores that his counsel immediately responded with citations to the applicable caselaw, and, moreover, that the court ultimately made express findings for termination consistent with the law.

**¶12** Contrary to Father's contention, the court's findings and conclusion were reasonable based on the evidence. Child was only four months old when Father was arrested, and Father thereafter did little to build or maintain a relationship with Child as he grew up. According to Mother, Father saw Child only four times in more than five years. And even according to Father's version of events, his interactions with Child were minimal: no more than nineteen visits and some phone and mail contact over that same period. He never sought to enforce his parenting

time or otherwise obtain more contact with Child, even after Mother petitioned for termination and stopped making Child available to Grandmother. On this record, the superior court reasonably found that Child and Father had a limited relationship when Father's incarceration began, that the relationship could not be nurtured during the incarceration, and that Child's young age made it likely that the incarceration—which is set to last until Child is nearly an adult[2]—would deprive him of a normal home. Further, on this record, the court reasonably found that Mother and Stepfather provided Child a normal home life with a paternal presence mitigating the harm caused by Father's absence. The court did not abuse its discretion by finding termination warranted under A.R.S. § 8-533(B)(4).

II.     The superior court properly found that termination served Child's best interests.

**¶13**          Father next argues that the superior court erred by finding termination was in Child's best interests. The best-interests inquiry focuses on the child's interest in stability and security. *Alma S. v. Dep't of Child Safety*, 245 Ariz. 146, 150, ¶ 12 (2018). Termination will serve the child's best interests if he or she would benefit from termination or be harmed by its denial. *Id.* at ¶ 13. This is a fact-specific inquiry that may be satisfied by the child's prospective adoption. *Demetrius L. v. Joshlynn F.*, 239 Ariz. 1, 4-5, ¶¶ 13, 16-17 (2016). Adoption benefits children by binding them legally and financially to their adoptive parents, ensuring consistency in their future care and creating additional inheritance rights. *Id.* at 5, ¶ 17.

**¶14**          Here, record evidence supports the superior court's finding that terminating Father's parental rights would serve Child's best interests by freeing him for adoption by Stepfather. Stepfather began acting as Child's father when he was very young, has continued to do so for years, is closely bonded with Child, and, with Mother's support, plans to adopt him as soon as possible. As the court properly found, adoption by Stepfather will ensure Child's continued care by his father figure, thereby giving him stability and permanency. The superior court did not abuse its discretion by finding that termination served Child's best interests.

---

[2] Nothing requires the court to presume an early release. *Jeffrey P. v. Dep't of Child Safety*, 239 Ariz. 212, 214, ¶ 8 (App. 2016). We further note that release conditions may affect Father's ability to interact with Child. *Id.* at ¶ 10.

## CONCLUSION

¶15        We affirm the termination of Father's parental rights.



MATTHEW J. MARTIN • Clerk of the Court
**FILED**:       JR